August 28, 2017

<u>Via ECF</u>

Honorable Gregory H. Woods
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2260
New York, NY  10007-1312

Re:   *U.S. Securities and Exchange Commission* v.
<u>*Penn West Petroleum Ltd., et al.*, 17 Civ. 4866-GHW (S.D.N.Y.)</u>

Dear Judge Woods:

Pursuant to the Court's Notice of Initial Pretrial Conference (ECF No. 29), Plaintiff U.S. Securities and Exchange Commission ("Plaintiff" or "SEC") and Defendants Penn West Petroleum Ltd., d/b/a Obsidian Energy Ltd. ("Company" or "Penn West"), Todd H. Takeyasu, and Jeffery A. Curran (collectively, "Defendants") submit this joint letter advising the Court on the status of the case.

**(1)    Nature of the Case, Principal Claims and Defenses, and Major Legal and Factual Issues**

<u>*Plaintiff's Statement of Nature of the Case and Principal Claims*</u>

Penn West, an oil producer with its principal place of business in Calgary, Alberta, is a Canadian and United States issuer, with a class of stock traded on the New York Stock Exchange.  This case involves Penn West's multi-year accounting fraud, orchestrated and implemented by Messrs. Takeyasu and Curran, to artificially reduce Penn West's operating costs, and make Penn West's annual and quarterly financial reports, filed with the SEC and disclosed to U.S. investors, tell a different story about the company's financial condition than the one that actually existed.   Mr. Takeyasu—Penn West's Chief Financial Officer—made materially false and misleading certifications to the SEC in connection with Penn West's annual filings, including that Penn West's financial statements were accurate and that any fraud, whether or not material, had been disclosed.   Mr. Curran—Penn West's Vice President of Accounting and Reporting—signed false and misleading quarterly sub-certifications, which represented that he was unaware of any material or significant control deficiencies, and that he had submitted any potentially material information to the Disclosure Committee for the preparation of Penn West's U.S. regulatory filings.   As a result of Defendants' fraud and concealment, Defendants consistently underreported Penn West's operating expenses in Penn West's annual and quarterly filings with the SEC during 2012, 2013, and the first quarter of 2014, ultimately causing Penn West to restate its annual audited financial statements for 2012 and 2013, and its unaudited interim financial statements for the first quarter of 2014 and 2013.

Hon. Gregory H. Woods                                                              -2-

The SEC alleges that as a result of their misconduct, Defendants violated the antifraud, recordkeeping, internal controls, and reporting provisions of the federal securities laws. The SEC has charged all Defendants with violating Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections 17(a)(1) and 17(a)(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]. The SEC also alleges that Penn West's conduct violated Section 17(a)(2) of the Securities Act, Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-16 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 & 240.13a-16], and Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) & (b)(2)(B)]. The SEC alleges that Messrs. Takeyasu and Curran aided and abetted certain of Penn West's violations, and independently violated Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rule 13b2-1 thereunder [17 C.F.R. § 240.13b2-1], and Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2]. Finally, the SEC alleges that Mr. Takeyasu violated Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14] and Section 304(a) of the Sarbanes-Oxley Act of 2002 ("SOX") [15 U.S.C. § 7243(a)].

Plaintiff disputes Defendants' Statement of the Nature of the Case and Principal Defenses, which also makes clear that there are myriad genuine issues of material fact for trial.

### _Defendants' Statement of the Nature of the Case and Principal Defenses_

Defendants dispute Plaintiff's allegations in the Complaint and characterization of the facts in this letter. Defendants anticipate stating the following defenses, mainly focusing on the issue of scienter, at the motion to dismiss stage, on summary judgment (if necessary), or at trial (if necessary):

- Plaintiff alleges no cognizable motive for the alleged fraud or that any individual Defendant benefitted from it. In fact, the evidence will show that Messrs. Takeyasu and Curran had a motive _not_ to commit the alleged fraud, because they would have received higher compensation if the alleged fraud had not occurred.

- Plaintiff's theory that Defendants intentionally caused the Company to misclassify operating expenses is irrational. For instance, the relevant accounting practices _decreased_ the Company's reported net income in 2013 and the first quarter of 2014. Moreover, the Company's restatement in 2014 reversed instances in which capital expenditures had been misclassified as operating expenses—_i.e._, in the opposite direction of the alleged fraud.

- The Company's practice of permitting various categories of costs to be initially booked for convenience as operating expenses, with certain of those costs later "reclassified" as capital expenditures, was fully appropriate and not suggestive of any improper intent.

Hon. Gregory H. Woods                                                                -3-

Defendants also reasonably relied on experienced internal accounting staff to ensure that any such reclassifications were made in accordance with: (a) the Company's policies and procedures; and (b) applicable accounting standards, which require professional judgment in light of the circumstances in any given instance.  Defendants did not have reason at the time to doubt the integrity or efforts of those individuals.

- To the extent the Company's restatement of financial results subsequently reversed reclassifications, the vast majority of the reversals were based upon an absence of contemporaneous documentation for the reclassifications, as opposed to a determination that the costs at issue had been misclassified.  Moreover, to the extent any of the costs were misclassified, any such misclassifications were not the product of misconduct by Mr. Takeyasu, Mr. Curran, or other senior executives.

- All certifications and sub-certifications by Messrs. Takeyasu and Curran were made in good faith and believed to be accurate.  Moreover, the Company's outside auditor, KPMG, signed off each year on the accuracy of the Company's financial reports and the effectiveness of its internal controls, thereby confirming Defendants' good faith belief in the accuracy of their certifications and sub-certifications.  Defendants did not mislead or conceal information from KPMG.

- The Complaint relies heavily on conclusory allegations that provide no support for Plaintiff's claims of misconduct.  The Complaint also contains misleading allegations that are contrary to facts known to Plaintiff.[1]

- Even if the misconduct alleged by Plaintiff had occurred—and it did not—Plaintiff may not seek any monetary relief from the Company for any alleged illicit profits, losses avoided, or other ill-gotten gains made outside the United States.

### _The Parties' Statement of Major Legal and Factual Issues_

At this stage of the proceedings, the parties believe that the major legal and factual issues most important to resolving the case include:  (1) whether the accounting practices at issue

---

[1]      For example, in Paragraph 123, Plaintiff alleges that Mr. Curran "does not appear to have responded in writing" to a March 2014 email from a subordinate concerning an allegedly improper $2 million reclassification, and the Complaint provides no description of any other form of response, thereby suggesting that Mr. Curran ignored the subordinate's concern and the entry remained in place.  But, in fact, the subordinate testified during Plaintiff's investigation that Mr. Curran responded to her concern by meeting with her and Mr. Grab and, after discussing the issue, personally directing reversal of the entry.

Hon. Gregory H. Woods                                                    -4-

complied with applicable accounting standards, internal controls, and industry practices and standards; (2) whether Defendants made false and misleading statements to the SEC, U.S. investors, and the Company's auditors; (3) whether Defendants acted with scienter; (4) whether the Company failed to maintain accurate books and records; and (5) whether Messrs. Takeyasu or Curran aided and abetted the Company's alleged violations of the securities laws. The parties also anticipate raising the claims and defenses set forth in pages 1-3 above.

**(2)     Subject Matter Jurisdiction and Venue**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, Sections 20 and 22 of the Securities Act [15 U.S.C. §§ 77t & 77v], and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), & 78aa]. Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in the Complaint occurred within the Southern District of New York. Further, Penn West's stock is traded on the New York Stock Exchange, which is located in the Southern District of New York. Defendants do not dispute jurisdiction or venue.

**(3)     Motions**

Defendants will file pre-motion letters in anticipation of filing motions to dismiss the Complaint pursuant to Rule 12(b)(6). At this time, Defendants anticipate that the principal grounds for their motions will be that Plaintiff fails to allege facts supporting a strong inference of scienter on the part of any Defendant and fails to satisfy the heightened pleading standard under Rule 9(b) for complaints alleging securities fraud.

Subject to the Court's approval and the parties' agreement to run the briefing schedule for the motions to dismiss concurrently with discovery, the parties have agreed upon the following briefing schedule for Defendants' motions to dismiss: (i) Motions to dismiss: October 24, 2017; (ii) Oppositions: November 29, 2017; and (iii) Replies: December 20, 2017.

The parties are not in agreement regarding when Defendants' pre-motion letters should be submitted. Defendants propose filing their letters 12 days before the proposed due date for the motions—*i.e.*, on October 12. Plaintiff proposes that Defendants' pre-motion letters be submitted by October 3 (21 days before the proposed due date for the motions), with Plaintiff's responses due on October 9 (15 days before the proposed due date for the motions).

Plaintiff believes that the October 12 due date proposed by Defendants will not provide the Court with adequate time to consider the parties' submissions, obviating the purpose of pre-motion submissions, and that Defendants already have had substantial time since the filing of the Complaint on June 28 to consider the grounds for any motions to dismiss. Defendants believe

Hon. Gregory H. Woods                                                              -5-

that their pre-motion letters are likely to be of more assistance to the Court if they are a detailed summary of the arguments to be made in the motions, and that the schedule proposed by Plaintiff will largely negate the effect of granting Defendants until October 24 to submit their motions. Defendants also note that if the Court determines, after receipt of the letters, that it requires more time to consider them, the proposed briefing schedule can be adjusted without any prejudice to Plaintiff because the parties have agreed to conduct discovery simultaneously with motion practice.  The SEC disagrees.

**(4)     Discovery**

Although discovery under the Federal Rules of Civil Procedure has not begun, the SEC's investigative files contain certain documents and sworn investigative testimony that are within the scope of Rule 26(b).  Specifically, the SEC collected approximately 500,000 documents (including duplicates) and has in its possession, custody, or control testimony from 24 individuals.   These documents and transcripts—excluding privileged or otherwise undiscoverable material—will be described in Plaintiff's Initial Disclosures and made available to Defendants promptly upon receipt of a request and entry of a Protective Order.

Although certain relevant documents already have been produced by the Company and third parties to the SEC and made available to Defendants, the parties anticipate making additional requests for production of documents and seeking responses to requests for admission. Defendants will request the record that Plaintiff compiled during its investigation, including, but not limited to, a complete set of the transcripts or other recordings of Plaintiff's witness interviews.  The parties also plan to conduct a significant number of depositions and seek third-party discovery.  The parties will need to obtain documents and deposition testimony from third-party witnesses in Canada, outside of the Court's subpoena power, and thus anticipate requesting the Court's approval of Letters Rogatory.  The parties also believe that it is appropriate to expand the number of depositions authorized under Rule 30, in light of the complexity of this case and the number of persons likely to have discoverable information.  Plaintiff believes that the number of depositions should be increased to 20, and Defendants believe that the number of depositions should be increased to 30.  The parties have agreed to confer in an effort to reach agreement about the number of depositions that will be needed after exchange of Initial Disclosures.[2]

Given the complexity of this case and potential complications arising from obtaining discovery from third parties in Canada, the parties have proposed in the Civil Case Management Plan and Scheduling Order that all fact discovery be completed by September 5, 2018, one year

---

[2]        If the parties learn through document discovery that additional depositions may be required, they will promptly notify the Court and request leave to conduct a reasonable number of additional depositions.

Hon. Gregory H. Woods                                              -6-

after the initial pretrial conference.  As noted above, the parties also propose conducting discovery simultaneously with the briefing of Defendants' motions to dismiss.  If, despite their good faith best efforts to obtain all necessary discovery in a timely manner, the parties encounter delay caused by the cross-border complications described above, the parties will promptly notify the Court and request modifications of the discovery schedule if appropriate.

The parties also anticipate designating expert witnesses on a variety of topics identified in the Civil Case Management Plan and Scheduling Order.  The parties have proposed to this Court that expert discovery should commence after the completion of fact discovery and be completed by January 17, 2019, approximately 19 weeks after the close of fact discovery.

**(5)      Damages**

The SEC does not claim or seek damages from Defendants in this action, but instead seeks various forms of equitable relief and remedial sanctions.  The two forms of monetary relief sought by the SEC are disgorgement (from Penn West), including prejudgment interest on the disgorgement, and civil penalties (from all Defendants).  With respect to disgorgement, the SEC seeks an order requiring Penn West to disgorge all illicit profits, losses avoided, or other ill-gotten gains that it received, and all amounts by which Penn West was unjustly enriched, based on the federal securities law violations alleged in the Complaint.  The SEC also seeks prejudgment interest from Penn West calculated from the date or dates that Penn West obtained or incurred illicit profits, losses avoided, or other ill-gotten gains at the underpayment rate of interest established under Section 6621(a)(2) of the Internal Revenue Code, 26 U.S.C. § 6621(a)(2), compounded quarterly.  With respect to civil penalties, the SEC seeks an order requiring all Defendants to pay civil money penalties under Section 21A of the Exchange Act for the federal securities law violations alleged in the Complaint.  Finally, with respect to Mr. Takeyasu, the SEC seeks, under SOX Section 304(a), to recoup certain compensation paid to and received by Mr. Takeyasu during the relevant period.

Defendants dispute that Plaintiff is entitled under the law, and based on the facts of this case, to obtain any of the relief described above.

**(6)      Settlement**

Counsel to the parties previously discussed settlement before the filing of the case, but were unable to reach agreement on any settlement.  At this stage of the proceedings, the parties do not believe that a settlement conference or other alternative dispute resolution measures would be productive.

Hon. Gregory H. Woods                                                              -7-

Respectfully submitted,


 /s/ Sarah Heaton Concannon                         /s/ Robert J. Giuffra, Jr.
Sarah Heaton Concannon                          Robert J. Giuffra, Jr.
Thomas A. Bednar (*pro hac vice*)               Matthew A. Schwartz
Matthew T. Spitzer (*pro hac vice*)             Julia A. Malkina
U.S. SECURITIES AND EXCHANGE                    SULLIVAN & CROMWELL LLP
COMMISSION                                      125 Broad Street
100 F Street, N.E.                              New York, New York  10004
Washington, D.C.  20549                         Tel: (212) 558-4000
Tel: (202) 551-5361                             Fax: (212) 558-3588
Fax: (202) 772-9292                             giuffrar@sullcrom.com
ConcannonS@sec.gov                              schwartzmatthew@sullcrom.com
BednarT@sec.gov                                 malkinaj@sullcrom.com
SpitzerM@sec.gov

                                                *Counsel for Defendant Obsidian*
*Counsel for Plaintiff U.S. Securities and*     *Energy Ltd.*
*Exchange Commission*

 /s/ Richard F. Albert                               /s/ Helen Gredd
Richard F. Albert                               Helen Gredd
Jasmine Juteau                                  Leigh G. Llewelyn
Priya Raghavan                                  LANKLER SIFFERT & WOHL LLP
MORVILLO ABRAMOWITZ GRAND IASON &               500 Fifth Avenue
ANELLO P.C.                                     New York, New York  10110
565 Fifth Avenue                                Tel: (212) 921-8399
New York, New York  10017                       Fax: (212) 764-3701
Tel: (212) 856-9600                             hgredd@lswlaw.com
Fax: (212) 856-9494                             lllewelyn@lswlaw.com
ralbert@maglaw.com
jjuteau@maglaw.com                              *Counsel for Defendant Jeffery A. Curran*
praghavan@maglaw.com

*Counsel for Defendant Todd H. Takeyasu*