# LANKLER SIFFERT & WOHL LLP
### ATTORNEYS AT LAW

33RD FLOOR
500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX     (212) 764-3701

October 12, 2017

<u>Via ECF</u>

Honorable Gregory H. Woods
U.S. District Court for the Southern District of New York
500 Pearl Street, Room 2260
New York, NY 10007-1312

        Re:   <u>U.S. Securities and Exchange Commission v. Penn West Petroleum Ltd., et al.</u>, 17 Civ. 4866-GHW (S.D.N.Y.)

Dear Judge Woods:

      In accordance with Rule 2(c)(i) of the Court's Individual Rules of Practice, Defendant Jeffery A. Curran respectfully submits this letter in advance of filing a motion to dismiss the Complaint in this action under Federal Rules of Civil Procedure 9(b) and 12(b)(6).

      As discussed at the initial conference held on September 5, this is anything but a typical matter. The U.S. Securities and Exchange Commission ("Plaintiff" or "SEC"), together with the Alberta Securities Commission ("ASC"), conducted a lengthy investigation into the accounting practices that led Canadian issuer Penn West Petroleum Ltd. ("Penn West") to restate certain of its previously reported financial results. That joint investigation involved, as the SEC has noted, taking sworn testimony from nearly two dozen individuals and collecting hundreds of thousands of documents from Penn West and its auditor. At the end of that joint investigation, however, the paths of the two regulators diverged sharply. The SEC filed sweeping fraud charges against Penn West and three former employees. The ASC, by contrast, declined to join the SEC in alleging that fraud had occurred at Penn West. Instead, the ASC publicly and pointedly stated that "our investigation led us to a different conclusion to that of the SEC." *See* S. Lynch and N. Williams, *U.S. charges Penn West Petroleum, ex-executives with accounting fraud*, Reuters, June 28, 2017 (quoting ASC spokeswoman Alison Trollope), available at https://www.reuters.com/article/us-penn-west-sec-idUSKBN19J227.

      That divergence in paths underscores the importance of scrutinizing the adequacy of the Complaint in this action. Despite the Complaint's heft—which is largely attributable to the repetition of conclusory allegations and the recitation of unremarkable and only marginally relevant detail about Penn West—the Complaint fails to do what the federal rules require. The Complaint fails to allege, as it must, particularized facts that support a strong inference that Mr. Curran acted with fraudulent intent. *See SEC v. Parnes*, No. 01 CIV 0763 LLS, 2001 WL 1658275, at *5 (S.D.N.Y. Dec. 26, 2001) (citations and internal quotes omitted). Indeed, the Complaint struggles to meet even the more basic requirement that it "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And those defects are particularly significant in light of the substantial investigative resources

LANKLER SIFFERT & WOHL LLP

Hon. Gregory H. Woods
October 12, 2017
Page 2

available to the SEC, and the considerable amount of time that was devoted to investigating Penn West. *See, e.g., SEC v. Espuelas*, 579 F. Supp. 2d 461, 481 (S.D.N.Y. 2008) (finding the "paucity of the SEC's allegations of scienter" particularly significant given that the complaint was filed after 17 investigative depositions); *SEC v. Patel*, No. CIV. 07-CV-39-SM, 2009 WL 3151143, at *14-15 (D.N.H. Sept. 30, 2009) (Rule 9(b) should pose no problem to the SEC given that it had already collected "nearly everything that could possibly be relevant").

Importantly, the Complaint does not allege that Mr. Curran had any personal motive to engage in a fraudulent scheme to understate Penn West's operating expenses. There are no allegations that Mr. Curran sought to obtain trading profits made possible by an alleged understatement of operating expenses. There are likewise no allegations—nor could there be—that Mr. Curran believed that increased operating efficiency would yield increased compensation for him. To the contrary, as Penn West's public filings make clear, when the company converted in early 2013 to a fixed-formula method for determining incentive compensation, the formulas weighted capital efficiency much more heavily than operating efficiency,[1] and the accounting decisions at issue improved operating efficiency to the ***detriment*** of capital efficiency.

Under the settled law of this Circuit, the absence of any apparent personal motive to engage in fraud requires that the strength of the allegations supporting an inference of fraudulent intent "be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted). That rule is grounded in the common-sense proposition that "[w]ithout a motive to commit securities fraud, businessmen are unlikely to commit it." *City of Livonia Emp. Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013) (Posner J.) (affirming dismissal of fraud claim); *see also SEC v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992) (reversing district court's finding of liability for securities fraud and noting, with respect to the absence of any financial motive for appellants to commit fraud, "[i]f we were to conclude that the appellants meant to defraud investors, we would have to believe that they did so for the sheer joy of it rather than for profit").[2] And where—as here—an individual had every reason to believe that engaging in the fraud alleged in the complaint would run ***counter*** to his personal economic interests, the strength of the allegations supporting an inference of fraudulent intent should, as a matter of logic, be greater still. *Cf. Kalnit*, 264 F.3d at 140 (dismissing complaint where plaintiff's theory of fraud "defies economic reason") (citations omitted).

Far from meeting Rule 9(b)'s exacting standard—which is designed not only to provide fair notice, but also to protect against unfounded accusations of fraud, *see Shields v. Citytrust*

---

[1] *See, e.g.*, Penn West Petroleum Ltd., Form 6-K, Management Proxy Circular (May 14, 2014), 35-36, 44-50 (describing Penn West's stock incentive program and cash bonus criteria). *See also, e.g., In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 583 (S.D.N.Y. 2011) (proper to take judicial notice of public filings in considering a motion to dismiss).

[2] Nor, of course, is it enough to plead "[m]otives that are generally possessed by most corporate directors and officers . . . ; instead plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 494 (S.D.N.Y. 2017) (citations and internal quotes omitted).

LANKLER SIFFERT & WOHL LLP

Hon. Gregory H. Woods
October 12, 2017
Page 3

*Bancorp. Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1998)—much of the Complaint is devoted to the sort of vague and conclusory allegations that this Court and others have characterized as failing to give rise to a strong inference of fraudulent intent. *See, e.g., PetEdge, Inc.*, 234 F. Supp. 3d at 493 (insufficient to assert that actions were taken "at the direction of" or were "caused by" another) (collecting cases); *SEC v. DiMaria*, 207 F. Supp. 3d 343, 355 (S.D.N.Y. 2016) (insufficient to assert that defendants knew but concealed some things or knew or were reckless in not knowing other things).[3] Other portions of the Complaint do no more than describe business activities that are entirely consistent with innocent conduct—and thus are likewise insufficient to support an inference of fraudulent intent. *See, e.g., Espuelas*, 579 F. Supp. 2d at 474.[4]

Especially given the length and breadth of the SEC's investigation—as well as its unfettered access to the person whom the Complaint places at the center of the alleged fraud—the dearth of particularized allegations regarding Mr. Curran is telling. Moreover, the handful of attempts at particularization contain conspicuous omissions, mischaracterizations of the documents referenced, or both—thereby precluding any inference of fraudulent intent, much less the strong inference required by Rule 9(b).

By way of example, Paragraph 123 of the Complaint alleges that Mr. Curran "does not appear to have responded in writing" to a March 2014 email from a subordinate concerning an allegedly improper reclassification to capital of $2 million in costs originally booked as expenses. However, the Complaint assiduously avoids addressing whether Mr. Curran responded in a form other than in writing and whether Mr. Curran permitted the entry to remain on Penn West's books. Without those missing pieces of the puzzle, it is impossible to conclude that the inferences the Complaint seeks to draw—namely, that Mr. Curran ignored concerns that were brought to his attention and was content to have dubious entries remain on Penn West's books—are reasonable. And, in fact, the contrary conclusion is compelled: if the missing pieces of the puzzle in fact supported the inferences sought to be drawn, "surely [they] should have found [their] way into the Complaint." *Espuelas*, 579 F. Supp. 2d at 481.

Mr. Curran respectfully requests the opportunity to demonstrate that the Complaint's other attempts at particularized allegations are no less flawed, and that because the entirety of the Complaint sounds in fraud, it must be dismissed in its entirety as to him. *See Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to all averments of fraud and is not limited to causes of action denominated as fraud); *Patel*, 2009 WL 3151143, at *4 (where the entire complaint "sounds in fraud," the SEC is required to meet the heightened pleading standard of Rule 9(b) for all causes of action alleged in the complaint).

---

[3] Examples of the numerous allegations that fall into this category include ¶¶ 48, 50, 56 (alleging that various actions by Mr. Grab were done "with Takeyasu and Curran's knowledge and oversight," or were "directed by" Takeyasu and Curran, or were actions that Takeyasu and Curran "oversaw, approved and encouraged").

[4] Examples of the Complaint's citation to conduct that is entirely consistent with good faith include ¶ 43 (monitoring Penn West's operating expenses); ¶ 64 (discussion of reclass to capital entries at monthly accrual meetings held with members of the accounting and finance teams); and ¶ 71 (monitoring Penn West's performance against budget).

LANKLER SIFFERT & WOHL LLP

Hon. Gregory H. Woods
October 12, 2017
Page 4

                                              Respectfully,

                                              Helen Gredd
                                              Leigh G. Llewelyn
                                              LANKLER SIFFERT & WOHL LLP
                                              500 Fifth Avenue
                                              New York, New York 10110
                                              Tel: (212) 921-8399
                                              Fax: (212) 764-3701
                                              hgredd@lswlaw.com
                                              lllewelyn@lswlaw.com

                                              *Counsel for Defendant Jeffery A. Curran*

cc:  All Counsel of Record (Via ECF)