**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

                      Plaintiff,

       v.

PENN WEST PETROLEUM LTD., d/b/a
OBSIDIAN ENERGY LTD., TODD H.
TAKEYASU, JEFFERY A. CURRAN, and
WALDEMAR GRAB,

                    Defendants.

No. 17 Civ. 4866 (GHW)

**<u>Oral Argument Requested</u>**


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**JEFFERY A. CURRAN'S MOTION TO DISMISS THE COMPLAINT**


Helen Gredd
Leigh G. Llewelyn
Lise Rahdert
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
(212) 921-8399 (Phone)
(212) 764-3701 (Fax)


Counsel for Defendant Jeffery A. Curran

## Table of Contents

Preliminary Statement ................................................................................................ 1

I.   The SEC does not address—because it cannot—the defects in the Complaint
     that preclude an inference of fraudulent intent .................................................. 2

     A.  Mr. Curran's personal financial incentives undermine rather than support an
         inference of fraudulent intent ...................................................................... 2

     B.  The SEC's sweeping claims impermissibly rest on labels and conclusory assertions
         rather than particularized allegations .......................................................... 4

     C.  The two emails specifically cited by the SEC in its opposing memorandum merely
         underscore the inadequacy of the Complaint ............................................... 7

II.  The factors cited by the SEC do not support an inference of scienter ............................. 8

     A.  Penn West's restatement of its financial results and settlement of this action ............ 8

     B.  The position held by Mr. Curran at Penn West ......................................................... 9

     C.  The purported disregard of red flags ........................................................................ 9

III. Second Circuit precedent requires dismissal of the entire Complaint .............................. 10

Conclusion ................................................................................................................. 11

<u>**Table of Authorities**</u>

**Page(s)**

**Cases**

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
   93 F. Supp. 2d 424 (S.D.N.Y. 2000).........................................................................9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
   381 F. Supp. 2d 192 (S.D.N.Y. 2004).......................................................................9

*Fogel v. Wal-Mart de México SAB de CV*,
   No. 13 Civ. 2282 (KPF), 2017 WL 751155 (S.D.N.Y. Feb. 27, 2017) ...............8, 9

*Hall v. The Children's Place Retail Stores, Inc.*,
   580 F. Supp. 2d 212 (S.D.N.Y. 2008).......................................................................9

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)...................................................................................2, 3

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017).......................................................................5

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
   568 F.3d 345 (2d Cir. 2009).......................................................................................8

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004).....................................................................................10

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009).........................................................................................9

*SEC v. DiMaria*,
   207 F. Supp. 3d 343 (S.D.N.Y. 2016).......................................................................2

*SEC v. Espuelas*,
   579 F. Supp. 2d 461 (S.D.N.Y. 2008)..................................................................7, 10

*SEC v. Steadman*,
   967 F.2d 636 (D.C. Cir. 1992)...................................................................................4

*In re Time Warner Inc. Sec. Litig.*,
   9 F.3d 259 (2d Cir. 1993) ..........................................................................................3

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ..........................................................8

**Statutes**

15 U.S.C. § 78u-4 (Private Securities Litigation Reform Act of 1995).......................................2, 3

**Rules and Other Authorities**

Fed. R. Civ. P. 9(b) ............................................................................................................2, 3, 5, 10

Defendant Jeffery A. Curran respectfully submits this reply memorandum of law in further support of his motion to dismiss the Complaint in this action.[1]

## **Preliminary Statement**

Electing a strategy of repetition in lieu of response, the SEC's opposing memorandum ignores the vast majority of Mr. Curran's arguments and does little more than urge this Court to accept as a given that fraud occurred at Penn West, and that scienter on Mr. Curran's part can be inferred by virtue of the position he held.  The SEC's memorandum thus conspicuously fails to address Mr. Curran's detailed demonstration that the handful of particularized allegations offered by the Complaint do not match its headlines, electing instead simply to repeat those headlines.  The SEC's memorandum likewise fails to address the indisputable fact that Mr. Curran's personal financial incentives ran counter to the alleged fraud, electing instead to invite this Court to join it in ignoring Second Circuit precedent on what constitutes a cognizable motive to commit fraud.

Similarly, in contending that the existence of fraud can be inferred from Penn West's restatement of its financial results—and, it would appear, from the fact that Penn West and Mr. Grab have settled rather than contested this action—the SEC invites this Court to disregard black-letter law to the contrary and fails to address that the nature of the restatement at issue, if anything, militates *against* an inference of fraud.  The SEC also misstates governing law in contending that Mr. Curran's position alone renders him subject to suit for fraud and that the certification he submitted during his 34 days as acting CFO of Penn West contributes to an inference of fraudulent intent.  Further still, despite devoting fully nine pages of its opposing

---

[1] Mr. Curran also respectfully adopts and incorporates by reference the reply memorandum filed by Defendant Todd H. Takeyasu.  Although the SEC criticizes Defendants for incorporating arguments by reference (Opp. 11 n.5), that practice is both common in this District and, in our experience, welcomed by courts as a means of avoiding duplicative briefing.

memorandum to the proposition that the Complaint should survive, at least in part, even if a strong inference of scienter has not been alleged (Opp. 36-45), the SEC's memorandum tellingly ignores Second Circuit precedent that is squarely to the contrary.

In short, much like the Complaint itself, the SEC's memorandum is most noteworthy for its omissions, and it merely confirms that the Complaint in this action must be dismissed in its entirety as to Mr. Curran.

I.     **The SEC does not address—because it cannot—the defects in the Complaint that preclude an inference of fraudulent intent.**

A.     **Mr. Curran's personal financial incentives undermine rather than support an inference of fraudulent intent.**

Although a reader of the SEC's opposing memorandum would be surprised to learn it, the absence of a personal financial incentive to engage in fraud is no less relevant when the SEC brings an action than when a private litigant does.  The Second Circuit's "motive and opportunity" test pre-dates the PSLRA and is a core aspect of the Circuit's interpretation of Rule 9(b).  As a result, and as the SEC itself has previously acknowledged to this very Court, the standard for what constitutes a cognizable motive to engage in fraud does not turn on the identity of the plaintiff, and that standard is met only if there are allegations of a "concrete and personal benefit to the individual defendants resulting from the fraud."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *see also id.* at 138 (noting that the PSLRA "'did not change the basic pleading standard for scienter in this circuit'") (quoting *Novak v. Kasaks*, 216 F.3d 300, 310 (2d Cir. 2000)); *SEC v. DiMaria*, 207 F. Supp. 3d 343, 355 (S.D.N.Y. 2016) (noting that the SEC did not dispute that the standard for motive articulated in *Kalnit* and other Second Circuit cases applies to actions brought by the SEC).

Unsurprisingly, the SEC does not cite a single case to support its newly minted position that the Second Circuit's "concrete and personal benefit" test is "inapplicable" to SEC

enforcement actions (Opp. 32), and instead simply relies on two cases from the First Circuit and

Northern District of Oklahoma for the proposition that the Complaint in this action adequately

pleads motive. (*Id.* at 31.)  But neither of those cases addresses whether different standards

should be used in assessing motive depending upon the identity of the plaintiff.  Nor does either

case even involve an enforcement action; rather, both involve actions governed by the PSLRA.

As a result, even if this Court were free to disregard the precedent of this Circuit and adopt a

different standard regarding motive for SEC enforcement actions, the cases cited by the SEC

provide no rationale for doing so.  Instead, they merely underscore that the Second Circuit's

interpretation of Rule 9(b) is stricter than that of certain other jurisdictions.

Nor is the SEC's effort to claim the existence of a cognizable motive aided by its passing

citation to *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993).  As the Second Circuit

explained in *Kalnit*, the defendants in *Time Warner* stood to derive a concrete and personal

benefit from the alleged fraud as a result of their economic interest in a specific transaction—*i.e.*,

a new rights offering—that was affected by the alleged fraud.  *Kalnit*, 264 F.3d at 141.  Here, by

contrast, the SEC has not alleged—because it cannot—any specific transaction that was affected

by the alleged fraud in a manner that redounded to Mr. Curran's personal economic advantage.

Indeed, and significantly, the SEC does not dispute that Penn West's compensation structure

gave Mr. Curran a personal financial incentive that ran ***counter*** to the alleged fraud in the

Complaint.  (Curran Mem. 3, 6, 13.)  Moreover, the SEC does not dispute that its public

exoneration of the CEOs who served Penn West at the time of the alleged fraud necessarily

means that Mr. Curran was under no pressure from the corporate suite to capitalize costs that

should have been expensed.  (Curran Mem. 3.)

3

Thus, as the SEC's memorandum simply confirms, this case bears no resemblance to those in which a motive to commit fraud has been adequately alleged.  Instead, it can be likened only to cases in which the SEC has essentially contended—without success—that individuals should be presumed to have been willing to engage in fraud for the "sheer joy of it."  *SEC v. Steadman*, 967 F.2d 636, 642 (D.C. Cir. 1992) (reversing a district court's finding of scienter). Indeed, if it were otherwise, the SEC would surely be less eager to abandon its prior position on what the law of this Circuit dictates regarding motive.

### B.  The SEC's sweeping claims impermissibly rest on labels and conclusory assertions rather than particularized allegations.

The SEC's opposing memorandum likewise provides no basis for concluding that Mr. Curran's opening memorandum erred in its analysis of the quality of the allegations contained in the Complaint.  To the contrary, the SEC concedes that the Complaint includes conclusory allegations and group pleading that this Court and others have characterized as insufficient to give rise to a strong inference of fraudulent intent. (Opp. 22); *see also* Curran Mem. 14-17 (documenting the Complaint's lack of specificity).  Moreover, while the SEC seeks to characterize those defective allegations as a minor aspect of the Complaint, its own opposing memorandum demonstrates the contrary.

Thus, for example, in disputing that Messrs. Curran and Takeyasu were impermissibly lumped together in the Complaint, the SEC identifies 31 paragraphs (out of 256 in the Complaint) that purport to describe actionable conduct that is specific to Mr. Curran.  (Opp. 23.) In fact, however, of those 31 paragraphs:

- three merely identify Mr. Curran's place of residence and/or the position he held at Penn West at various points in time (¶¶ 4, 19, 82);

- one merely identifies Mr. Curran as having attended an earnings call (¶ 26);

4

- one merely identifies Mr. Curran as having been told by a colleague that the colleague was not personally a proponent of certain of the accounting practices at issue, but that Mr. Takeyasu "thinks otherwise" (¶ 94);

- nine merely identify documents that Mr. Curran signed (¶¶ 55, 131, 136, 159, 163-66, 220); and

- three are, on their face, conclusory summaries of allegations purportedly detailed earlier in the Complaint (¶¶ 186, 205, 234).

Further still, each of the remaining 14 paragraphs was shown in Mr. Curran's opening memorandum to contain significant omissions and mischaracterizations of the documents they reference. *See* Curran Mem. 8-9, 17-25 (discussing ¶¶ 46, 65, 81, 114-17, 119-20, 122-25, 135). And, tellingly, rather than respond to that analysis, the SEC's memorandum wholly ignores it and simply reiterates, without elaboration, that the paragraphs support an inference of fraudulent intent.

Similarly, although the SEC broadly contends that the paragraphs referring to Messrs. Curran and Takeyasu in tandem are not conclusory, the SEC does not point to a single conversation involving the two that is described other than in a conclusory fashion. The Complaint is, quite literally, a litany of labels and conclusions, and the SEC's memorandum does no more than echo those labels and conclusions.[2] And that approach does not come close to satisfying the requirements of Rule 9(b). *See, e.g.*, *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 493 (S.D.N.Y. 2017) (collecting cases).

The SEC's memorandum also confirms that the Complaint's theory, at its core, is based upon self-contradictory allegations. Thus, most notably, the SEC confirms that it is not contending that all participants at Penn West's monthly accrual meetings necessarily "knew

---

[2] Indeed, although Mr. Curran's opening memorandum identified no fewer than 58 paragraphs that exemplified the Complaint's reliance on labels and conclusions (Curran Mem. 6 n.7), the SEC's memorandum does not explain how that characterization is inaccurate with respect to a single one of those paragraphs.

about the fraudulent nature of [the] accounting entries" discussed at those meetings.  (Opp. 28.)

But in so confirming, the SEC necessarily concedes that the Complaint's repeated claims that

fraud was discussed at accrual meetings are not to be taken literally.  That concession is

significant—both for what it says about the Complaint's approach to pleading, and because the

Complaint relies so heavily on discussions and documents connected to the accrual meetings.

Otherwise stated, the SEC has conceded that despite any discussions that occurred at the

accrual meetings and any documents that were reviewed—which, at times, referred to

reclassifications in round numbers—participants in those meetings could have believed that the

reclassifications were entirely legitimate, and that the discussions amounted to nothing more than

the equally legitimate and unremarkable exercise of tracking performance against budget.  And

while the SEC contends that Messrs. Curran and Takeyasu could not have been among those

who held that belief, it offers no particularized support for its contention—electing instead

simply to fall back on repetition of labels and conclusory assertions.  (Opp. 27-28.)

### C.  The two emails specifically cited by the SEC in its opposing memorandum merely underscore the inadequacy of the Complaint.

As noted in Mr. Curran's opening memorandum, the SEC collected thousands of emails

involving Mr. Curran, yet referenced only a handful in its 81-page Complaint and even then

routinely mischaracterized the content of those emails.  In its opposing memorandum, the SEC

makes no attempt to defend the Complaint's characterization of the emails, and whittles the

number of emails worthy of comment to a universe of two.  (Opp. 14, 15.)

But neither of those emails—both of which were addressed in Mr. Curran's opening

memorandum—contributes to an inference of fraudulent intent.  As previously noted, one email

pre-dates the relevant period by fully three years and contains statements that in any event belie

the gloss put on it by the SEC.  (Curran Mem. 8 n.8.)  And the second email—which the SEC

characterizes as an explicit instruction by Mr. Curran to hide information from Penn West's Board of Directors—was, among other things, sent to an individual who was not a participant in the alleged fraud and could not have been expected to be amenable to concealing information from Penn West's Board.  (Curran Mem. 19.)  And the fact that those two emails are regarded by the SEC as the strongest cards in its deck merely confirms that the substantial investigative record compiled by the SEC is utterly bereft of evidence that can reasonably be characterized as suggesting that Mr. Curran acted with intent to defraud.  *See, e.g.*, *SEC v. Espuelas*, 579 F. Supp. 2d 461, 481 (S.D.N.Y. 2008) (finding the "paucity of the SEC's allegations of scienter" to be particularly significant in light of the investigative resources that were available to the SEC).

## II.     The various factors cited by the SEC do not support an inference of scienter.

Unable to demonstrate that its Complaint contains particularized allegations of deliberate misconduct, the SEC attempts to salvage it by contending that various factors support, at minimum, an inference of recklessness—a theory that is thoroughly at odds with the Complaint's central claim that Messrs. Curran and Takeyasu orchestrated the alleged fraud at Penn West.  In addition, the SEC even goes so far as to caution that the issue before the Court is not whether the SEC will ultimately prevail on either theory, but whether it has alleged enough to survive a motion to dismiss.  (Opp. 9.)  It has not.

### A.  Penn West's restatement of its financial results and settlement of this action

As the SEC apparently would have it, the existence of fraud at Penn West is a foregone conclusion in light of Penn West's restatement of its financial results and its decision to settle with the SEC.  (Opp. 1, 17.)  In fact, however, it is well-established that the mere occurrence of a restatement—which reflects a conclusion that applicable accounting standards militate in favor of altering a prior treatment of items on an income statement or balance sheet—does not give rise

to an inference that the original treatment was the product of fraud.  *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014).  Moreover, the SEC cites no case in which fraud was inferred from a restatement that, as here, included reversal of a substantial number of entries that were ***counter to*** the goal of the alleged fraud.  Nor does the SEC even attempt to explain how such an inference could be characterized as plausible.

Similarly, and despite the prominence it is accorded in the SEC's opposing memorandum (Opp. 1), the fact that Penn West decided to settle rather than contest this action is entitled to no weight in assessing the adequacy of the Complaint as to Mr. Curran.  Penn West has consistently disputed—including to this Court—that what occurred at the company can properly be characterized as fraud, and the company was not required to admit the existence of fraud as part of its settlement with the SEC.  There are also, of course, myriad reasons why a public company—or, for that matter, an individual without an interest in protecting a license or livelihood in the financial sector—might agree to a resolution of fraud charges that does not accord with the merits of the case.  As a result, and wholly apart from the black-letter prohibition against according evidentiary weight to settlements, *see, e.g.*, *Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351-52 (2d Cir. 2009), the decisions made by Penn West and Mr. Grab provide no support for an inference that fraud in fact occurred at Penn West.

### B.  The position held by Mr. Curran at Penn West

Moreover, even if it were assumed *arguendo* that the Complaint is sufficient to support an inference of fraudulent intent on the part of Mr. Grab, the SEC misstates the law of this Circuit in contending that the mere fact of Mr. Curran's position is sufficient to support a strong inference that he likewise participated in fraud.  (Opp. 12-13.)  *See, e.g.*, *Fogel v. Wal-Mart de México SAB de CV*, No. 13 Civ. 2282 (KPF), 2017 WL 751155 at *16 (S.D.N.Y. Feb. 27, 2017)

(allegations of fraudulent intent "derived solely from . . . job title" or supervision of a "culpable individual" do not support a strong inference of scienter).[3]

Nor, of course, can fraud be inferred from the fact that Mr. Curran signed certifications or sub-certifications that may have later proved to be incorrect.  What is instead required—and absent here—are particularized allegations giving rise to a strong inference that Mr. Curran knew the certifications to be inaccurate or was reckless in attesting to his belief in their accuracy.  *See, e.g.*, *Hall v. The Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 231-32 (S.D.N.Y. 2008).  And, in that regard, it bears emphasis that recklessness requires a state of mind "approximating actual intent, and not merely a heightened form of negligence."  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (citation omitted).

## C.  The purported disregard of red flags

Plainly, the SEC hopes to suggest the existence of recklessness by repeatedly intoning that Mr. Curran disregarded red flags.  But as Mr. Curran's principal memorandum demonstrated—in a detailed analysis that the SEC wholly ignores—the Complaint's own particularized allegations flatly negate its attempted portrayal of Mr. Curran as someone who disregarded concerns that came to his attention.  (Curran Mem. 20-25.)  Indeed, those very allegations—especially when coupled with the Complaint's gaps and gyrations—reveal a transparent effort to plead around inconvenient facts.  *See, e.g.*, *id.* at 20-21 (discussing, by way of example, the Complaint's allegation that Mr. Curran "does not appear to have responded in writing" to a concern raised about a particular reclassification, while omitting to mention that the

---

[3] Indeed, the very cases cited by the SEC make clear that a defendant's job title or responsibilities can be dispositive only when—as is manifestly not the case here—a cognizable motive to commit fraud has been established, leaving opportunity to commit fraud as the only remaining issue.  *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 93 F. Supp. 2d 424, 444-46 (S.D.N.Y. 2000).  *Accord In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 231 (S.D.N.Y. 2004) (declining to "indulge [plaintiff's] invitation to infer [defendant's] scienter from the fact that executives who reported to [defendant] (both directly and indirectly) may have engaged in fraudulent behavior").

reclassification was promptly reversed after the concern was brought to Mr. Curran's attention). And given the substantial investigative resources available to the SEC, that approach to pleading powerfully confirms the absence of any reason to conclude that Mr. Curran failed to act in good faith while at Penn West. *See, e.g.*, *Espuelas*, 579 F. Supp. 2d at 481.

## III.   Second Circuit precedent requires dismissal of the entire complaint.

Unsurprisingly, then, the SEC spends fully nine pages of its opposition memorandum attempting to explain why certain of the Complaint's causes of action should survive even if the requisite inference of fraudulent intent has not been shown.  (Opp. 36-45.)  But in undertaking that extended exercise, the SEC misdescribes the relevant inquiry and ignores the Second Circuit precedent that defines the relevant inquiry.

As the Second Circuit held in *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), what matters is not what sort of complaint the plaintiff ***might have*** crafted, but what sort of complaint the plaintiff in fact crafted.  Thus, as the Court in *Rombach* explained:

> By its terms, Rule 9(b) applies to "all averments of fraud."  This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.

*Id.* at 171 (citation omitted).

As a result, where—as here—the entire complaint sounds in fraud because each cause of action expressly re-alleges and incorporates the entirety of the complaint's accusations of fraud, the entire complaint must be dismissed.  *Id.*  And that is so because "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case."  *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003)) (internal quotation marks omitted).

## <u>Conclusion</u>

For the reasons stated, the Complaint should be dismissed in its entirety as to Mr. Curran.

Dated: January 8, 2018

/s/ Helen Gredd
Helen Gredd
Leigh G. Llewelyn
Lise Rahdert
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Tel: (212) 921-8399
Fax: (212) 763-3701
hgredd@lswlaw.com
lllewelyn@lswlaw.com
lrahdert@lswlaw.com

*Counsel for Defendant Jeffery A. Curran*