**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : : : |
| Plaintiff, | : : |
| v. | No. 17 Civ. 4866 (GHW) : : |
| PENN WEST PETROLEUM LTD., d/b/a OBSIDIAN ENERGY LTD., TODD H. TAKEYASU, JEFFERY A. CURRAN, and WALDEMAR GRAB, | : : **Oral Argument Requested** : : : |
| Defendants. | : : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF TODD H. TAKEYASU'S MOTION TO DISMISS

Richard F. Albert
Jasmine Juteau
Priya Raghavan
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600

**TABLE OF CONTENTS**

                                            **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT................................................................................................................................3

    I.    The Opposition Fails to Remedy the Complaint's Lack of Well-Pleaded Facts Supporting a Strong Inference of Scienter ............................................3

          A.    The Opposition Ignores the Lack of Facts Indicating that the Reclassifications Were Unjustified, Much Less that Mr. Takeyasu Was Aware of That................................................................................3

          B.    The So-Called "Red Flags" Are Illusory ................................................5

          C.    Mr. Takeyasu's Role Does Not Create a Strong Inference of Scienter ................................................................................................8

          D.    The SEC's Averments of Concealment Are Hollow ...........................9

    II.   The Entire Complaint Sounds in Fraud and Should be Dismissed..............................10

CONCLUSION.............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) ................................................................................................ 2

*Goplen v. 51job, Inc.*,
  453 F. Supp. 2d 759 (S.D.N.Y. 2006) ................................................................................ 9

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  381 F. Supp. 2d 192 (S.D.N.Y. (2004) ............................................................................... 8

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................................................................................ 5

*In re Omnicom Grp., Inc. Sec. Litig.*,
  No. 02 CIV. 4483 (RCC), 2005 WL 735937 (S.D.N.Y. Mar. 30, 2005) ............................ 2

*Rombach v. Chang*
  355 F.3d 164 (2d Cir. 2004) ............................................................................................. 10

*S.E.C. v. Adelphia Commc'ns Corp.*,
  No. 02 CIV. 5776 (PKC), 2006 WL 8406833 (S.D.N.Y. Nov. 16, 2006) ......................... 9

*S.E.C. v. DiMaria*,
  207 F. Supp. 3d 343 (S.D.N.Y 2016) ................................................................................ 2

*S.E.C. v. Espuelas*,
  579 F. Supp. 2d 461 (S.D.N.Y 2008) ................................................................................ 9

*S.E.C. v. Stanard*,
  No. 06 CIV 7736 (GEL), 2009 WL 196023 (S.D.N.Y. Jan. 27, 2009) .............................. 9

*Wolfe v. Aspenbio Pharma, Inc.*,
  587 F. App'x 493 (10th Cir. 2014) .................................................................................... 7

## **PRELIMINARY STATEMENT**

Because the mere allegation of securities fraud causes significant reputational harm, and because there can be great temptation to level such a claim when a company faces difficulties, courts play a critical gatekeeping role in ensuring that a plaintiff set forth facts strongly indicating wrongful intent before a securities fraud claim can proceed.  As detailed in our Opening Brief ("Br."), and further herein, the Complaint fails to meet this fundamental requirement as to Mr. Takeyasu.[1]

In its Opposition Brief ("Opp'n"), the SEC restates its conclusions and doubles down on its rhetoric by comparing this case—which Penn West's primary regulator declined to pursue and in which the SEC cleared Penn West's CEOs of wrongdoing—with WorldCom, one of history's most massive and notorious criminal accounting frauds, in which the CEO received a 25-year prison sentence.  The Opposition Brief also ignores factual allegations debunked in the Defendants' briefs and embellishes others.  But it does not, and cannot, remedy the central factual shortcomings of its claim that the accounting issues identified in Penn West's Restatement—fundamentally, the failure of accounting staff to marshal sufficient documentary backup for journal entries reclassifying certain expenditures from operating ("opex") to capital ("capex")—were somehow the result of a long-running fraud conspiracy orchestrated by Mr. Takeyasu.  Despite the SEC's lengthy investigation and the cooperation of the individual who implemented the reclassifications, Wally Grab, strikingly absent from the Complaint is a single statement Mr. Takeyasu allegedly made to Mr. Grab directing him to carry out the purported scheme, or a single instance in which Mr. Grab or anyone else communicated to Mr. Takeyasu that the reclassification entries were unjustified.

---

[1] Mr. Takeyasu respectfully adopts and incorporates by reference the relevant portions of the reply brief filed by Defendant Jeffery A. Curran.

The applicable legal standard requires that a plaintiff "allege facts that give rise to a strong inference of fraudulent intent." *S.E.C. v. DiMaria*, 207 F.Supp.3d 343, 355 (S.D.N.Y. 2016) (citations omitted).[2] Here, because the SEC cannot allege a personal financial motive, the SEC must allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" and "the strength of the circumstantial allegations must be correspondingly greater" than if motive were alleged. *Id.*[3] The circumstantial evidence pleaded here—including the Restatement itself, other public documents and documents referenced in the Complaint—includes the following facts at odds with any inference that Mr. Takeyasu orchestrated a fraudulent scheme to lower Penn West's reported opex:

- Because Penn West's incentive compensation program rewarded capital efficiency far more than operating efficiency for most of the period at issue, the misconduct alleged was contrary to Mr. Takeyasu's personal financial interest;

- There is no allegation that Mr. Takeyasu's direct supervisors during the relevant period, CEOs Murray Nunns and David Roberts, directed or pressured Mr. Takeyasu to improperly reduce reported opex; to the contrary, the SEC has publicly cleared Nunns and Roberts of any misconduct;

- While, according to the Complaint, Mr. Takeyasu was directing Penn West's accounting department to reclassify opex to capex in order to artificially understate Penn West's opex, that department was simultaneously reclassifying large sums of capex to opex;

- The reclassifications to capex and other accounting practices reversed in the Restatement, by their nature and magnitude, could not have escaped the attention of Penn West's outside auditor, KPMG, nor Penn West's Audit Committee, nor its Board, and nowhere does the Complaint allege that these groups were unaware of such practices;

---

[2] Contrary to the SEC's arguments, Mr. Takeyasu does not seek to hold the Complaint to a higher pleading standard than is applicable here. *See* Opp'n at 10-11. The Complaint is governed by, and falls well short of, this Circuit's settled pleading standards for non-PSLRA securities fraud claims, as applied by this Court in *DiMaria*.

[3] Despite the SEC's assertions, the motives described in the Opposition are exactly the kind of general corporate motives that the courts of this Circuit have held fail to give rise to a strong inference of fraudulent intent. *Compare* Br. at 4-8, *with* Opp'n at 31-33. The SEC relies on out-of-circuit authority that, "contrary to controlling Second Circuit authority, deems self-interested motivation of defendants in the form of saving their salaries or jobs evidence of scienter." *In re Omnicom Grp., Inc. Sec. Litig.*, No. 02 CIV. 4483 (RCC), 2005 WL 735937, at *12 (S.D.N.Y. Mar. 30, 2005) (distinguishing *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002)) (internal quotation omitted).

- Penn West's Restatement also reversed substantial sums of capex it found to be incorrectly classified as opex, and thus in direct opposition to the claimed scheme;

- Nowhere does the Complaint allege that Penn West's Business Controls and Risks ("BCR") Group, which was effectively its internal auditor, nor KPMG, found during the relevant period a material weakness or even a significant deficiency in the Company's journal entry policy or its financial controls generally.

Against this backdrop, the few particularized facts pertaining to Mr. Takeyasu that remain after the Complaint's legal conclusions and pejorative verbiage is stripped away, viewed holistically, fall short of supporting any inference of fraudulent intent, much less a strong one.

## ARGUMENT

I.  **The Opposition Fails to Remedy the Complaint's Lack of Well-Pleaded Facts Supporting a Strong Inference of Scienter**

Although the SEC focuses the vast majority of its 45-page Opposition on Mr. Takeyasu, it fails to address the central flaw in its case against him. Instead, it follows three frequently used tropes for allegations of scienter: (1) red flags; (2) executive role/expertise; and (3) concealment. But the purported facts marshalled in the Complaint are not what the SEC claims.

   A.  **The Opposition Ignores the Lack of Facts Indicating that the Reclassifications Were Unjustified, Much Less that Mr. Takeyasu Was Aware of That**

As pointed out in our Opening Brief, the Restatement made no finding of the absence of expenditures that actually qualified as capital sufficient to support the reclassifications to capex, but only determined that the adjusting journal entries "appear to have been made without adequate supporting documentation."[4] The Complaint similarly nowhere identifies particular

---

[4] *See* SEC Ex. 11 (Restatement press release) at 1. Although the SEC seeks to rely upon the Restatement's comment that "senior finance and accounting personnel . . . [were] involved in the adoption and use of the accounting practices that led to the [R]estatement," *id*. at 4, that comment, even assuming it refers to Mr. Takeyasu, does not support an inference of scienter. There was and is nothing inherently improper about the accounting practices at issue. Rather, the execution of the accounting practices, in particular, the asserted failure of accounting staff to attach adequate supporting documentation to adjusting journal entries, led to the Restatement.

reclassified projects or even dollar amounts that it claims substantively did not qualify as capital. In response, the SEC argues that "it is beyond question that [it] has pleaded more than mere 'technical' mistakes or documentation errors." Opp'n at 26. However, the Complaint's critical shortcoming is its lack of any *fact* supporting the assertion that the amounts reclassified to capex did not reflect economic reality, much less that Mr. Takeyasu was aware that was the case. Perhaps the most telling example of this deficiency is the absence of any allegation whatsoever that Grab, the SEC's cooperator, ever discussed with Mr. Takeyasu that these adjustments were unjustified. Beyond rhetoric, the Complaint provides no facts supporting its claim that Mr. Takeyasu had any reason to believe that the amounts budgeted for reclassification were not supportable, much less any facts indicating that Mr. Takeyasu was aware that certain accounting staff were not doing their job to gather and append that support.[5]

The SEC's only attempt to support its theory, and thus the linchpin of its entire case against Mr. Takeyasu, is its repeated assertion that the amount budgeted for annual reclassifications was "false" and "not a true budget" and just a "tool in furtherance of Defendants' fraud." Compl. ¶¶ 3, 45-46. The Complaint's sole effort to go beyond these conclusory labels to assert a factual allegation pertaining to Mr. Takeyasu is its claim that Penn West's production department did not participate in determining this budget. *Id*. ¶ 45. But the Opposition utterly fails to address that, as pointed out in our Opening Brief, the very document

---

[5] Such factual allegation is notably absent from the SEC's claim that the July 2012 reclassification of $10 million, followed by an additional $30 million over the remainder of the year, supports an inference of scienter. Compl. ¶¶ 57-65. While the SEC alleges that these reclassifications were done at Mr. Takeyasu's "instruction," the Complaint never offers any fact demonstrating how or why Mr. Takeyasu should have known these reclassifications were unjustified. Although the Complaint notes that these reclassifications were later reversed in the Restatement (thus apparently because accounting staff did not append adequate backup to the relevant journal entries) the Complaint conspicuously fails to allege that they were substantively incorrect, or if so, why. Meanwhile, it paradoxically reveals that Mr. Takeyasu openly discussed these reclassifications with members of senior management, *id*. ¶ 61, and asked that a slide be prepared for the Board describing the final 2012 opex/boe calculation, including these $40 million in reclassifications, *id*. ¶ 65.

4

the Complaint relies upon refutes its allegation; it shows the substantive participation of the Senior Vice President of Production in setting the reclassification to capex budget for 2013.  *Id.* ¶ 67; Ex. 2.  Thus, the SEC's core allegation that Mr. Takeyasu was aware the budgeted reclass amounts had "no basis in reality"—unlikely on its face—falls away.  *See*, *e.g.*, *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).  No amount of rhetoric can convert a technical violation of the accounting rules regarding backup documentation into a blatant CFO-led fraud.

## B.      The So-Called "Red Flags" Are Illusory

The SEC claims that Mr. Takeyasu received warnings about the relevant accounting issues:  from the BCR Group, from the presence of "large, round" numbers in accrual packets and from a 2005 email from Grab.  These allegations were debunked in Mr. Takeyasu's Opening Brief, but rather than substantively address these points, the Opposition merely repeats and embellishes the Complaint's insufficient claims.

As explained at length in Mr. Takeyasu's Opening Brief, the Complaint's allegations that Mr. Takeyasu ignored a warning concerning Penn West's journal entry policy are demonstrably inadequate and undermined by the documents upon which the Complaint relies.  Br. at 20-22; *see* Compl. ¶¶ 109-12.  Yet the Opposition nowhere addresses the Complaint's distortion and exaggeration of the findings of the BCR Group.  Rather, it embellishes the claim, asserting that "Takeyasu personally dictated large round number entries to meet [reclass] targets [and] ignored warnings from the BCR Group about *those entries*."  Opp'n at 37 n.16 (emphasis added).[6]   But neither the Complaint nor the BCR Group documentation referenced therein ever suggest that

---

[6] *See also* Opp'n at 25 (arguing Mr. Takeyasu ignored questions about "the lack of documentation for *reclassifications* of tens of millions of dollars") (emphasis added).  But the Complaint does not allege that the journal entries that were tested related to reclassifications, *see* Compl. ¶¶ 109-12, nor are reclass entries ever mentioned in the documents upon which the Complaint relies, *see* Ex. 3 at 7.

5

any of the entries tested by the BCR Group were "personally dictated" by Takeyasu, or reflected "large round numbers," or that they even related to the reclassification of expenses. *Compare* Exs. 3 and 4, *with* Compl. ¶¶ 109-12. These mischaracterizations—and the SEC's silence about them in its Opposition—speak loudly to the shortcomings of the Complaint as a whole.

The SEC also fails to substantively respond to the fact that large, round number entries are unsurprising—and far from a red flag—given that Penn West prepares its financial statements using the accrual method. Such entries reflect estimates of anticipated expenditures. And the SEC never claims that KPMG was unaware of these "large" entries. As explained in Mr. Takeyasu's Opening Brief and left unrebutted in the Opposition, decisions at the motion to dismiss stage have held that a failure to probe into allegedly abnormal numbers, and targets closely met, do not constitute red flags supporting a strong inference of scienter. Br. at 18-19.

The SEC's claim amounts to "obviousness": that the accrual packets received by Mr. Takeyasu (and several other senior accounting and finance personnel) "made clear on their face the large, typically round number, amounts of [opex] reclassified as [capex] to meet specific opex/boe targets." Opp'n at 14, 19. It argues that "[i]t does not require high-level accounting knowledge to know that moving hundreds of millions of dollars in operating expenses to capital expenditures and royalties without any basis in economic reality is improper." *Id.* at 18; *see id.* at 18-19 (noting "the obviousness of the accounting impropriety").

The SEC appears to recognize the limits of this argument, particularly since the "large, round numbers" were similarly apparent to Penn West's accounting and finance personnel, its internal and external auditors, senior executives and Board of Directors, none of whom are claimed to have participated in the fraud, including the two CEOs the SEC has publicly exonerated. *See* Br. at 14-15. Thus later in its Opposition Brief the SEC argues conversely that

Messrs. Takeyasu and Curran exhibited "a level of knowledge and sophistication concerning accounting matters that other participants in communications and accrual meetings did not," including access to unidentified "additional information" supposedly only they controlled. Opp'n at 28.  But the SEC cannot have it both ways. The adjustments cannot be both obviously improper and known only to Messrs. Takeyasu and Curran in the face of open discussion.

The SEC's remaining "red flag" allegation as to Mr. Takeyasu is based on a mischaracterization of an isolated document years before the Relevant Period, a November 2005 email from Grab.  The SEC argues that "despite knowing, through his receipt in 2005 of an email from Grab stating that the goal of the fraud was to 'have as much remaining in Capex without raising flags with our external auditors,'" Mr. Takeyasu nevertheless continued to rely on Grab. Opp'n at 13.  The 2005 email is far too remote in time to create any inference of scienter.[7] Further, the discussion concerns the reclass from capex to opex, adjustments moving in the *opposite* direction of the scheme alleged in the Complaint, and thus antithetical to "the fraud" claimed by the SEC.[8]  Not surprisingly, the Complaint cites not a word from the author of the email, the SEC's cooperator, Grab, to tie it to the claimed scheme.

---

[7] *See* Br. at 13 n.9; *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 498 (10th Cir. 2014) (defendant's remarks about a company's problems, made months before the relevant period, would not establish scienter during the relevant period).

[8] The context of the email chain, attached as Reply Exhibit 1, further negates the SEC's contention.  In it, several senior executives—including David Middleton, COO; Thane Jensen, SVP of Exploration and Development; and Eric Obreiter, VP of Production—discussed guidelines for determining when production expenditures should be categorized as "Operating Expense Versus Capital."  Grab suggested new procedures; the existing process involved treatment of expenses as capex in the first instance, followed by the COO's review to determine "which ones would need to be re-classed into Opex for PW's financial reporting purposes," *i.e.*, the opposite of the reclass at issue here. Believing that the guidelines proposed by the COO would "not pass the scrutiny of auditors and for GCA reporting purposes," Grab suggested a centralized review of expenses by the VP of Production and—most importantly—requested further guidance "from this meeting tomorrow" with these senior executives, as to how detailed that review needed to be.  Grab's inartful phrasing aside, his question was what materiality standard the Company would apply.  The SEC's claim that this was Grab announcing, years beforehand, a "plan" to lower opex using improper transfers to capex is demonstrably inconsistent with the document.  And contrary to the unsupported claim that Mr. Takeyasu "fail[ed] to follow-up on Grab's email," Opp'n at 19, it is clear from the face of the email that Grab would receive guidance from senior executives in a meeting the very next day.  Reply Ex. 1; Penn West Energy Trust, 2005

### C.    Mr. Takeyasu's Role Does Not Create a Strong Inference of Scienter

Failing to put forth any adequate allegations that Mr. Takeyasu ignored red flags, the SEC argues that because Mr. Takeyasu was the "executive most responsible for the Company's accounting," given the "duration and magnitude" of the alleged fraud, scienter can be inferred. Opp'n at 12-19.  But the SEC's own cases do not go this far, and cannot scale the mountain of precedent cited by Defendants that role alone does not support an inference of scienter.[9]  Unlike the plaintiff in *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 221-22 (S.D.N.Y. 2004), the SEC has failed to identify specific information to which Mr. Takeyasu was exposed that alerted him to the alleged fraud.  And the limited scope and technical nature of the Restatement's findings here cut against an inference of scienter.

The SEC further relies on Mr. Takeyasu's responsibility as CFO for establishing Penn West's accounting policies and practices, and maintaining controls.  Opp'n at 17-18.  But this is just another way of pleading based on Mr. Takeyasu's role.  At bottom the Complaint alleges a failure to append documentary backup by the accounting staff responsible for doing so; the Company's reconsideration of the accounting treatment for UOCR; and purported technical violations of accounting rules regarding the treatment of accruals that are not factually tied to Mr. Takeyasu.[10]  Despite the ongoing review of Penn West's BCR Group, and KPMG, neither

---

Annual Information Form (Mar. 24, 2006), at 31, https://www.sedar.com/DisplayCompanyDocuments.do?lang=EN&issuerNo=00030980.

[9] The SEC's reliance on a prior enforcement action alleging accounting fraud by the officers of a Canadian public company, *S.E.C. v. Dunn*, is ironic, given that although the Court initially denied the defendants' motion to dismiss, the SEC was later forced to recognize that it could not make its case, and it dismissed its claims against the non-settling defendants: Nortel's CEO, CFO and Controller.  *S.E.C. v. Dunn*, 07-CV-2058, Dkt Entry Nos. 160-63 (S.D.N.Y. Dec. 24, 2014).

[10] As to the UOCR practice, the answer negating any claim of scienter may be boiled down to four letters: KPMG.  The Complaint reveals that Penn West used this accounting treatment openly and maintained it for "many years," Compl. ¶ 93, and the Restatement reveals that the sums so treated at times approached $100 million annually.  Common sense compels the conclusion that such a practice, even if it were "somewhat unique," had to have been well known to Penn West's outside auditor.  The Complaint tellingly never alleges otherwise.  Reconsideration of this longstanding and open practice in the Restatement does not make it fraudulent.

8

alerted Mr. Takeyasu that these aspects of Penn West's accounting policies and practices were noncompliant. These allegations provide no support for an inference of scienter.

### D. The SEC's Averments of Concealment Are Hollow

Again failing to substantively respond to the arguments in Mr. Takeyasu's Opening Brief, the SEC relies on the assertion that Mr. Takeyasu's signing of management representation letters to KPMG that failed to reveal the alleged fraud is sufficient to allege a Rule 13b2-2 violation and otherwise indicative of scienter. But this so-called "concealment" is merely a failed attempt to bootstrap the insufficient fraud claims; effectively the only information Mr. Takeyasu was personally responsible for providing was that he was not aware of any fraud. Indeed, the cases the SEC cites undermine its own argument. For example, in *S.E.C. v. Espuelas*, 579 F. Supp. 2d 461, 487 (S.D.N.Y. 2008), the court dismissed a Rule 13b2-2 claim against a defendant who—like Mr. Takeyasu—"neither ignored red flags nor acted recklessly," as his conduct was reasonable. *Id.* at 469 (management representation letters that "did not disclose the 'true economic realities' of the challenged transactions," without more, failed to support a strong inference of scienter).[11] The argument that Mr. Takeyasu's certifications to the SEC "are particularly probative of [] scienter," Opp'n at 20, also fails for this reason. *Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774-75 (S.D.N.Y. 2006) (that a defendant "signed [an] SEC filing—without specific allegations of reasonably available facts that should have put him on notice that the reported financial results were false—does not give rise to a strong inference of scienter").

Although the Complaint alleges that Mr. Takeyasu did not personally disclose information to Penn West's auditors concerning the accounting practices at issue, as explained in

---

[11] The remaining cases relied upon by the SEC involve defendants who the courts found had engaged in conscious misbehavior or recklessness, and are therefore inapposite. *S.E.C. v. Stanard*, No. 06 CIV 7736 (GEL), 2009 WL 196023, at *28 (S.D.N.Y. Jan. 27, 2009); *S.E.C. v. Adelphia Commc'ns Corp.*, No. 02 CIV. 5776 (PKC), 2006 WL 8406833, at *14 (S.D.N.Y. Nov. 16, 2006).

the Opening Brief, and as the Opposition does not and cannot rebut, the Complaint alleges no facts indicating that the CFO was directly responsible for providing such information, or that he directed others to withhold it, much less that the auditors did not receive it.

## II.     The Entire Complaint Sounds in Fraud and Should Be Dismissed

The SEC devotes nine pages of its Opposition Brief to retroactively asserting the lower standards that might apply in reconfigured claims Three, Four, Six, Eight, Ten through Twelve and Fourteen against Mr. Takeyasu.  Opp'n at 36-44.  However, as explained in our Opening Brief, Rule 9(b)'s heightened pleading standard applies to all claims that "sound in fraud" and "is not limited to claims styled or denominated as fraud . . . insofar as the claims are premised on allegations of fraud."  *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004).  The Complaint incorporates by reference 180 paragraphs rife with allegations of fraud into each cause of action against Mr. Takeyasu.[12]  Having opted, in all of its causes of action, to rely upon bald and unmistakable language of fraud—with all the reputational harm that rhetoric entails—the SEC cannot now seek refuge in a negligence standard.  *See id*.  Under these circumstances, "courts are not required to sift through allegations of fraud in search of some lesser included claim" that perhaps could have been pled but was not.  *Id.* at 176 (internal quotation omitted).  The proper remedy is dismissal of the Complaint.  *Id.*

## CONCLUSION

The circumstances surrounding Penn West's Restatement are at odds with the fraud scheme the SEC claims, and after a two-and-a-half year investigation with full subpoena power, the best the SEC can muster does not amount to facts supporting a strong inference of scienter as to Mr. Takeyasu.  Accordingly, its claims should be dismissed.

---

[12] *See* Compl. ¶¶ 181, 190, 194, 199, 208, 214, 218, 222, 227, 231, 237, 242, 246, 250.

Dated:  January 8, 2018

s/  Richard F. Albert
_____
Richard F. Albert
Jasmine Juteau
Priya Raghavan
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
ralbert@maglaw.com
jjuteau@maglaw.com
praghavan@maglaw.com

*Counsel for Defendant Todd H. Takeyasu*
