UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,
       Plaintiff,

v.

PENN WEST PETROLEUM LTD., d/b/a
OBSIDIAN ENERGY LTD., TODD H.
TAKEYASU, JEFFERY A. CURRAN, and
WALDEMAR GRAB,
       Defendants.

No. 17 Civ. 4866 (GHW)

## MEMORANDUM OF LAW IN SUPPORT OF JEFFERY A. CURRAN'S AND TODD H. TAKEYASU'S UNOPPOSED MOTION FOR THE ISSUANCE OF LETTERS ROGATORY

Richard F. Albert
Jasmine Juteau
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
(212) 856-9600 (Phone)
(212) 856-9494 (Fax)

*Attorneys for Defendant Todd H. Takeyasu*

Helen Gredd
Leigh G. Llewelyn
Lise Rahdert
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
(212) 921-8399 (Phone)
(212) 764-3701 (Fax)

*Attorneys for Defendant Jeffery A. Curran*

# **TABLE OF CONTENTS**

Preliminary Statement ............................................................................................................... 1

I.   The Authority and Standards for Issuing Letters Rogatory ............................................... 2

II.  The Evidence Sought By Defendants is Relevant. ............................................................. 4

III. The Letters Rogatory Are Likely to be Granted by the Canadian Courts. ......................... 6

    A.  Defendants' Request Satisfies Canada's Statutory Requirements for Granting Letters Rogatory. ........................................................................................ 7

    B.  Defendants' Request Satisfies Canada's Discretionary Factors for Granting Letters Rogatory. ...................................................................................... 8

        1.  The evidence sought is relevant. ................................................................ 9

        2.  The evidence is necessary for pre-trial discovery or trial of the U.S. action. ........................................................................................................ 9

        3.  The evidence cannot otherwise be obtained. ........................................... 10

        4.  The order sought is not contrary to Canadian public policy. ................... 11

        5.  The order sought is not unduly burdensome. ........................................... 12

Conclusion ................................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allianz Sigorta, A.S. v. Ameritech Indus.*,
   Inc., No. 2:15-CV-1665 MCE AC, 2016 WL 1127705 (E.D. Cal. Mar. 23,
   2016) ..................................................................................................................................4

*Bigio v. Coca-Cola Co.*,
   448 F.3d 176 (2d Cir. 2006)..................................................................................................4

*Blagman v. Apple, Inc.*,
   12-cv-5453 (ALC) (JCF), 2014 WL 1285496 (S.D.N.Y. Mar. 31, 2014)...............................3

*City of New York v. Fedex Ground Package System, Inc.*,
   13-cv-9173 (ER), 2016 WL 1718261 (S.D.N.Y. Apr. 27, 2016) ............................................3

*Elliot Assoc. v. Peru*,
   No. 96-cv-7917 (RWS), 1997 WL 436493 (S.D.N.Y. Aug. 1, 1997) .....................................3

*Joseph v. Gnutti Carlo S.p.A.*,
   No. 15-cv-8910 (AJN), 2016 WL 4083433 (S.D.N.Y. July 25, 2016)..............................2, 3, 6

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
   841 F. Supp. 2d 769 (S.D.N.Y. 2012)..................................................................................2, 4

*Netherby Ltd. v. Jones Apparel Grp., Inc.*,
   No. 04-cv-7028 (GEL), 2005 WL 1214345 (S.D.N.Y. May 18, 2005)...................................3

*O'Brien v. City of Yonkers*,
   No. 07-cv-3974 (KMK) (LMS), 2013 WL 1234966 (S.D.N.Y. Mar. 22, 2013) ...................10

*Progressive Minerals, LLC v. Rashid*,
   No. 07-108, 2009 WL 1789083 (N.D. W.Va. June 23, 2009)................................................3

*Richardson v. Shell Canada Ltd.*,
   2012 ABQB 170 (Can. Alta. Q.B.) ...................................................................................7, 8

*Samad Bros., Inc. v. Bokara Rug Co.*,
   No. 09-cv-5843 (JFK) (KNF), 2012 WL 43613 (S.D.N.Y. Jan. 9, 2012) .............................10

*United States v. Al Fawwaz*,
   No. 98-cr-1023 (LAK), 2014 WL 627083 (S.D.N.Y. Feb. 18, 2014) .....................................2

*United States v. Lee*,
   723 F.3d 134 (2d Cir. 2013)...................................................................................................2

**Statutes**

28 U.S.C. § 1331 ................................................................................................................8

28 U.S.C. § 1781(b)(2) ...................................................................................................1, 2

28 U.S.C. § 1783 ..............................................................................................................10

Alberta Evidence Act § 56(1) ............................................................................................7

Canada Evidence Act §§ 46, 51 .....................................................................................4, 7

Nova Scotia Evidence Act § 71(1) ....................................................................................7

Ontario Evidence Act § 60(1) ............................................................................................7

**Other Authorities**

23 Am. Jur. 2d *Depositions and Discovery* § 15 (Nov. 2017 Update) .............................2

Fed. R. Civ. P. 26 .....................................................................................................3, 5, 6

Fed. R. Civ. P. 28(b)(2)..................................................................................................1, 2

Fed. R. Civ. P. 32(a)(4)(B) ..............................................................................................10

Fed. R. Civ. P. 45(c)(1) ...................................................................................................10

State Department: Legal Considerations, Canada, *available at*
    https://travel.state.gov/content/travel/en/legal-
    considerations/judicial/country/canada.html ............................................................4

Defendants Jeffery A. Curran and Todd H. Takeyasu (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion for the issuance of letters rogatory pursuant to Fed. R. Civ. P. 28(b)(2) and 28 U.S.C. § 1781(b)(2).  Plaintiff United States Securities and Exchange Commission (the "SEC") consents to the relief sought in Defendants' motion and, as reflected in the letters rogatory attached as exhibits to this memorandum (the "Letters Rogatory"), likewise seeks the opportunity to examine the witnesses described in the Letters Rogatory.

## Preliminary Statement

This action involves the accounting practices of a Canadian issuer whose common stock trades on the Toronto Stock Exchange and the New York Stock Exchange.  All but one of the 37 individuals identified in the initial disclosures of Defendants and/or the SEC (collectively, the "Parties") are nationals and residents of Canada.  Accordingly, those individuals are outside the subpoena power of this Court, and judicial assistance from the courts of Canada is needed to examine the majority of those witnesses.

In keeping with the Court's directive at the initial conference in this action, the Parties have worked cooperatively to present the Court with an agreed-upon set of Letters Rogatory.  In addition, in an effort to minimize burden on the Canadian courts and guard against obstacles to, or delay in, the issuance of orders enforcing the Letters Rogatory, the Parties have worked cooperatively and extensively with counsel for various of the prospective witnesses with the goal of crafting procedures for examinations that are likely to be acceptable to the witnesses and their counsel.

As a result of that consultative process, which remains ongoing, the Letters Rogatory and the contemplated Canadian enforcement orders offer significant substantive and procedural

protections to the prospective witnesses. It is therefore the Parties' hope that enforcement of the Letters Rogatory ultimately will be unopposed, and the Parties will continue their work toward that end. In addition, because of the substantial efforts that have been made—and will continue to be made—to consult with, and address the concerns of, counsel for the prospective witnesses, it is the Parties' hope that the courts of the three Canadian provinces to which the Letters are addressed will act expeditiously in enforcing the proposed Letters Rogatory.

Defendants accordingly request, and the SEC consents to, the issuance of Letters Rogatory directed to the Court of Queen's Bench of Alberta, the Ontario Superior Court of Justice, and the Nova Scotia Supreme Court. The requested Letters Rogatory, including the appendices thereto, appear as Exhibits 1 through 3 to this Memorandum.

**I.        The Authority and Standards for Issuing Letters Rogatory**

"Letters rogatory are the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts . . . to assist the administration of justice in the former country." *United States v. Al Fawwaz*, No. 98-cr-1023 (LAK), 2014 WL 627083, at *2 (S.D.N.Y. Feb. 18, 2014) (internal quotation marks omitted); *see* 23 Am. Jur. 2d *Depositions and Discovery* § 15 (Nov. 2017 Update). This Court has the authority to issue letters rogatory pursuant to Rule 28(b)(2) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1781(b)(2). *See United States v. Lee*, 723 F.3d 134, 142 n.6 (2d Cir. 2013); *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012). The assistance requested in letters rogatory "may include taking evidence from a person within the foreign court's jurisdiction." *Joseph v. Gnutti Carlo S.p.A.*, No. 15-cv-8910 (AJN), 2016 WL 4083433, at *1 (S.D.N.Y. July 25, 2016). "The request for assistance from one court to another is . . . usually granted[] by reason of the comity existing

between nations in ordinary peaceful times." *Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 778 (internal quotation marks omitted).

"The determination to issue letters rogatory is committed to the court's discretion." *Blagman v. Apple, Inc.*, 12-cv-5453 (ALC) (JCF), 2014 WL 1285496, at *4 (S.D.N.Y. Mar. 31, 2014). In determining whether to issue letters rogatory, "the court applies the relevance standards of Rule 26 of the Federal Rules of Civil Procedure." *Id.* "Rule 26 permits discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Joseph*, 2016 WL 408433, at *1 (internal quotation marks omitted). Thus, "relevance, for purposes of discovery, is an extremely broad concept." *Blagman*, 2014 WL 1285496, at *4 (internal quotation marks omitted). "Information that is relevant to any claim or defense of any party is discoverable, as well as information reasonably calculated to lead to the discovery of admissible evidence." *Id.* (internal quotation marks omitted). "The burden of demonstrating relevance is on the party seeking discovery." *City of New York v. FedEx Ground Package System, Inc.*, 13-cv-9173 (ER), 2016 WL 1718261, at *5 (S.D.N.Y. Apr. 27, 2016) (internal quotation marks omitted).

Courts routinely issue letters rogatory where the movant makes a reasonable showing that the evidence sought may be relevant to any party's claim or defense and is proportional to the needs of the case. *See, e.g.*, *Netherby Ltd. v. Jones Apparel Grp., Inc.*, No. 04-cv-7028 (GEL), 2005 WL 1214345, at *2 (S.D.N.Y. May 18, 2005) (ordering issuance of letters rogatory to Canada to permit production of documents and the taking of depositions); *see Elliot Assocs. v. Peru*, No. 96-cv-7917 (RWS), 1997 WL 436493, at *2-3 (S.D.N.Y. Aug. 1, 1997) (granting plaintiff's request for letters rogatory to take testimony in the United Kingdom); *Progressive Minerals, LLC v. Rashid,* No. 07-108, 2009 WL 1789083, at *3-4

3

(N.D. W.Va. June 23, 2009) (granting motion for issuance of letters rogatory to permit document and deposition discovery in Canada). Thus, "to the extent [that] there are witnesses abroad who are beyond the court's subpoena power, their testimony can be provided by depositions taken pursuant to letters rogatory." *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006).

When U.S. courts issue letters rogatory for transmission to Canadian courts for enforcement, courts in Canada enforce the letters rogatory pursuant to domestic statute or common law.[1] The Canada Evidence Act provides that a court outside of Canada may transmit a letter of request to a Canadian court. *See Lantheus Med. Imaging, Inc.*, 841 F. Supp. 2d at 777. The Canada Evidence Act further provides that a Canadian court may, upon receipt of a letter of request from a court outside Canada, order a deposition and command the production of writings or documents relating to the matter. *Allianz Sigorta, A.S. v. Ameritech Indus.*, Inc., No. 2:15-CV-1665 MCE AC, 2016 WL 1127705, at *2 (E.D. Cal. Mar. 23, 2016); *see* Canada Evidence Act §§ 46, 51, *available at* http://laws-lois.justice.gc.ca/eng/acts/C-5/ (last visited March 15, 2018).

## II.  The Evidence Sought by Defendants is Relevant.

This action is a civil enforcement action brought by the SEC against Penn West Petroleum Ltd. ("Penn West"), a Canadian oil and gas company now doing business as Obsidian Energy Ltd., and three of Penn West's former senior finance and accounting employees. *See* Compl. ¶¶ 1-13 ("SEC Complaint"). Broadly stated, the SEC Complaint alleges that Penn West and three individual defendants—including Mr. Takeyasu (Penn West's former Chief Financial

---

[1] Canada is not a party to the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters, nor is it a party to the Inter-American Convention on Taking Evidence Abroad. *See* State Department: Legal Considerations, Canada, *available at* https://travel.state.gov/content/travel/en/legal-considerations/judicial/country/canada.html (last visited March 15, 2018).

4

Officer) and Mr. Curran (Penn West's former Vice President of Accounting and Reporting)—engaged in a multi-year fraud designed to artificially lower Penn West's reported operating expenses, principally by improperly reclassifying certain operating expenses to capital expenses, and also by improperly reclassifying certain operating expenses as royalty payments and improperly using certain accruals. (*Id.*)[2]

Each of the 25 individuals described in the Letters Rogatory (the "Prospective Witnesses") was listed in one or both of the initial disclosures served by the Parties in this action pursuant to Fed. R. Civ. P. 26(a)(1),[3] and each of the Prospective Witnesses have specific knowledge of the facts relating to the accounting decisions and practices at issue in the SEC Complaint. (Declaration of Helen Gredd dated March 21, 2018 ("Gredd Decl.") ¶¶ 20-22; *see also* Ex. 1 (Section II & Appendix III); Ex. 2 (Section II); Ex. 3 (Section II).)[4] Certain of the Prospective Witnesses, for example, participated in meetings at which the SEC alleges the accounting decisions and practices at issue were discussed. (*Id.*) Other Prospective Witnesses communicated with Messrs. Takeyasu and Curran or with other Penn West employees about the events described in the SEC Complaint. (*Id.*) And still other Prospective Witnesses have detailed knowledge of the business and financial practices at Penn West that relate to the

---

[2] Penn West and the third individual defendant named in the Complaint—Waldemar Grab, a former Operations Controller at Penn West—have settled the SEC's claims against them. (Dkts. 28, 68.) Messrs. Takeyasu and Curran have disputed the claims and have moved to dismiss the SEC's Complaint on the ground that it fails to meet the pleading requirements for alleging fraud. (Dkts. 57-62.) By order of this Court, discovery is to proceed while the Court considers the motions made by Messrs. Takeyasu and Curran. (Dkt. 44.)

[3] Messrs. Takeyasu and Curran, together with Penn West, served a joint statement of initial disclosures. *See* Declaration of Helen Gredd dated March 21, 2018 ("Gredd Decl.") ¶ 5 n.1.

[4] As reflected in the Letters Rogatory, judicial assistance is not being requested at this time for certain other individuals designated in the Parties' initial disclosures because: (i) several of those individuals have agreed to make themselves available without the formal issuance of Letters Rogatory, and the Parties believe that those agreements are unlikely to be revoked (Gredd Decl. ¶ 7 n.4); and (ii) with respect to one individual with health issues, discussions are ongoing with the individual's counsel with respect to accommodations that would enable the taking of that individual's testimony. (*Id.* ¶ 5 n.2.)

allegations in the SEC Complaint. (*Id.*)[5] Accordingly, the testimony of each of the Prospective Witnesses is indisputably relevant under Fed. R. Civ. P. 26. *See, e.g.*, *Joseph*, 2016 WL 408433, at *1 ("Rule 26 permits discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.") (internal quotation marks omitted).

Moreover, as set out in their motions to dismiss the SEC Complaint, Defendants strongly dispute that the facts alleged in the Complaint support an inference of scienter, and further contend that the Complaint on its face makes plain that critical parts of the narrative relating to Defendants' actions and the accounting practices at Penn West have been omitted. *See generally* Dkt. 59 (Curran Memorandum of Law); Dkt. 61 (Takeyasu Memorandum of Law). As a result, if this action is permitted to go forward, it is essential for Defendants to have an opportunity to memorialize the testimony of witnesses with knowledge of the relevant facts so that: (i) the Court can assess on a motion for summary judgment whether any genuine issue of material fact exists with respect to the SEC's claims; and (ii) if necessary, Defendants can present evidence at trial from witnesses who are beyond the subpoena power of this Court.

### III.     **The Letters Rogatory Are Likely to be Granted by the Canadian Courts.**

Notably, there is every reason to believe that the Letters Rogatory will be enforced by the Canadian courts. That is so because: (i) the Letters Rogatory satisfy the statutory requirements for their enforcement; (ii) each of the discretionary factors considered by Canadian courts militates in favor of enforcement; and (iii) the Parties have made substantial efforts to craft procedures for the taking of testimony that will or should be acceptable to the Prospective Witnesses and their counsel. And while this Court is not required to make a finding

---

[5] A more detailed description of the subject matter about which each of the individuals would be examined is provided in the Letters Rogatory attached as exhibits to this motion. (Ex. 1 at 5 & Appendix III; Ex. 2 at 4-5; Ex. 3 at 4-5.)

6

that the requested assistance is likely to be granted, the likelihood that it will in fact be granted provides further confirmation that the Letters Rogatory are proper and well within the discretion of this Court to issue.

### A. **Defendants' Request Satisfies Canada's Statutory Requirements for Granting Letters Rogatory.**

Section 46(1) of the Canada Evidence Act provides, in relevant part, that: "If, on an application for that purpose, it is made to appear to any court or judge that any court . . . outside Canada, before which any civil, commercial or criminal matter is pending, is desirous of obtaining the testimony in relation to that matter of a . . . witness within the jurisdiction of the first mentioned court . . . the court or judge may, in its or their discretion, order the examination on oath . . . before any person or persons named in the order." *See Richardson v. Shell Canada Ltd.*, 2012 ABQB 170 (Can. Alta. Q.B.); Alberta Evidence Act § 56(1) ("When . . . it is made to appear that a court or tribunal of competent jurisdiction in a foreign country has . . . authorized the obtaining of the testimony, in or in relation to any action . . . of a witness out of its jurisdiction and within the jurisdiction of the Court of Queen's Bench, the Court may order the questioning of the witness before the person appointed."). *Accord* Ontario Evidence Act § 60(1); Nova Scotia Evidence Act § 71(1).

Thus, Canadian courts may issue orders compelling deposition testimony in response to letters rogatory when the following conditions are met: (i) a United States court has authorized the obtaining of evidence; (ii) the witness whose evidence is sought is within the jurisdiction of the court to which the request for assistance is directed; (iii) the evidence sought relates to a proceeding pending before the U.S. court; and (iv) the U.S. court is a court of competent jurisdiction.

7

The proposed Letters Rogatory satisfy each of those conditions.  *First*, if this motion is granted, a United States court will have duly authorized Defendants to obtain evidence through Letters Rogatory.  *Second*, the province of residence for each of the Prospective Witnesses has been determined, and the proposed Letters Rogatory are directed to the Canadian courts with jurisdiction over the residents of those provinces.  *Third*, the testimony of the Prospective Witnesses relates to the captioned action, a litigation currently pending before the U.S. District Court for the Southern District of New York.  *Fourth*, this Court is a court of competent jurisdiction, established under Article III of the U.S. Constitution, and accordingly is authorized to adjudicate this action under 28 U.S.C. § 1331.

### B. **Defendants' Request Satisfies Canada's Discretionary Factors for Granting Letters Rogatory.**

Similarly, each of the factors that Canadian courts look to in determining whether to exercise their discretion to enforce a request for judicial assistance militates in favor of enforcing the Letters Rogatory requested here.  Those factors—which are addressed in turn below—are: (i) whether the evidence sought is relevant; (ii) whether the evidence is necessary for a trial or for discovery; (iii) whether the evidence is otherwise available through some other source; (iv) whether there is any public policy reason to refuse the request; and (v) whether the letters rogatory request an activity that would place an undue burden on the proposed witness.  *Richardson v. Shell Canada Ltd.*, 2012 ABQB 170 [26] (Can. Alta. Q.B.).[6]

---

[6] Where relevant, Canadian courts also consider whether the documents requested have been identified with reasonable precision.  *Richardson v. Shell Canada Ltd.*, 2012 ABQB 170 [26] (Can. Alta. Q.B.).  Since Defendants seek deposition testimony, not documents, that factor is not relevant here.

1. **<u>The evidence sought is relevant.</u>**

As demonstrated above and in the Letters Rogatory themselves, the testimony of the Prospective Witnesses is indisputably relevant to this action. *See* Section II *supra*. Moreover, to assist the Canadian courts in confirming the relevance of the testimony sought, the Letters Rogatory provide a detailed description of the role that each of the Prospective Witnesses played at Penn West as well as the topics on which each witness is sought to be examined. In the Letters Rogatory directed to the Ontario Superior Court of Justice and the Nova Scotia Supreme Court—each of which has jurisdiction over one Prospective Witness—those descriptions are provided in the body of the Letters Rogatory. *See* Ex. 2 at 4-5; Ex. 3 at 4-5. In the Letters Rogatory directed to the Court of Queen's Bench of Alberta—which has jurisdiction over 23 Prospective Witnesses—the descriptions are provided both in the body of the Letters Rogatory and in a lengthy appendix to the Letters Rogatory. *See* Ex. 1 at 5 & Appendix III. In addition, each of the Letters Rogatory appends a copy of the SEC Complaint so that the Canadian courts can, if they wish, further confirm the relevance of the Prospective Witnesses to the claims in this action. *See* Ex. 1 (Appendix II); Ex. 2 (Appendix I); Ex. 3 (Appendix I).

2. **<u>The evidence is necessary for pre-trial discovery or trial of the U.S. action.</u>**

It is likewise clear that the evidence requested by Defendants is necessary both for pre-trial discovery and for trial. Unlike the SEC, Defendants did not have the ability to subpoena witnesses prior to the filing of the Complaint in this action. Nor did Defendants have an opportunity to participate in the investigative testimony taken by the SEC or the Alberta Securities Commission ("ASC") and thereby memorialize any evidence relevant to their defenses. (Gredd Decl. ¶ 21) Nor do any of the Parties have the ability to compel the

Prospective Witnesses to appear for a deposition or at trial in the United States because all of the Prospective Witnesses are outside the subpoena power of this Court. *See* 28 U.S.C. § 1783; Fed. R. Civ. P. 45(c)(1) and 32(a)(4)(B).

Moreover, because—as specified in the Letters Rogatory—each of the Parties will be afforded the opportunity to question the Prospective Witnesses, the testimony taken will indisputably be admissible for any purpose at a trial in this action. *See, e.g.*, *Samad Bros., Inc. v. Bokara Rug Co.*, No. 09-cv-5843 (JFK) (KNF), 2012 WL 43613, at *2 (S.D.N.Y. Jan. 9, 2012) (prior deposition testimony is admissible for any purpose if the witness is outside the subpoena power of the Court and therefore unavailable for trial); *O'Brien v. City of Yonkers*, No. 07-cv-3974 (KMK) (LMS), 2013 WL 1234966, at *7 (S.D.N.Y. Mar. 22, 2013) (prior testimony admissible if it satisfies the three requirements of Fed. R. Evid. 804(b)(1): "(1) the witness is unavailable; (2) the party against whom the testimony is offered is the same as in the prior proceeding; and (3) that that party had the same motive and opportunity to examine the witness" (internal quotation marks omitted)).[7]

### 3. The evidence cannot otherwise be obtained.

As noted above, each of the Prospective Witnesses is outside the subpoena power of this Court, and Defendants have not previously had the opportunity to participate in the examination of the Prospective Witnesses regarding the facts relevant to the claims and defenses in this action. Moreover, no one except the Prospective Witnesses can speak to their respective recollections and understandings of the events referenced in the SEC Complaint. As a result,

---

[7] For that reason, as the Letters Rogatory reflect, the SEC also seeks an opportunity to question each of the Prospective Witnesses, and the Letters Rogatory have been structured to afford that opportunity. (Ex. 1 at 5; Ex. 2 at 5; Ex. 3 at 5.)

the evidence needed for resolution of this action cannot be obtained except by means of Letters Rogatory directing examination of the Prospective Witnesses.

### 4. The order sought is not contrary to Canadian public policy.

Defendants have made due inquiry with their respective Canadian counsel and are not aware of any principle of Canadian public policy that would be violated by compelling the requested testimony. (Gredd Decl. ¶ 14.) To the contrary, Defendants believe that it should be regarded as sound public policy for Canada to provide its citizens with access to the evidence needed for their defense to an action brought against them by a foreign regulator. (*Id*.)

In addition, the Letters Rogatory have been structured to provide the Prospective Witnesses with substantive and procedural protections under both Canadian and U.S. law. Thus, as reflected in the Letters Rogatory, the Prospective Witnesses will have the ability to invoke any "privilege or duty to refuse to give evidence under the laws of Canada or the United States." (Ex. 1 at 6; Ex. 2 at 6; Ex. 3 at 6.) In addition, the Prospective Witnesses will be afforded the choice of proceeding under either Canadian or U.S. examination procedures,[8] and will also have recourse to the relevant Canadian courts if they believe that any aspect of the examination is improper. (Ex. 1 at 6; Ex. 2 at 5-6; Ex. 3 at 5-6.)

Further still, the Letters Rogatory provide that the Prospective Witnesses will be afforded the same protections enjoyed by U.S.-based witnesses under the Confidentiality Order entered in this action, with modifications appropriate to reflect the nationality of the

---

[8] With respect to the Letters Rogatory addressed to the Ontario Superior Court of Justice and the Nova Scotia Supreme Court, no reference to the possibility of using U.S. procedures has been made because it is the Parties' understanding that the relevant Prospective Witnesses would prefer to use Canadian procedures. (Gredd Decl. ¶ 12 n.8.)

11

Prospective Witnesses. (Ex. 1 at 6-7; Ex. 2 at 6-7; Ex. 3 at 6-7.) Thus, the Letters Rogatory expressly recite that the Prospective Witnesses are Producing Parties within the meaning of the Confidentiality Order (a copy of which is appended to the Letters Rogatory) and accordingly are entitled to the rights and protections of Producing Parties. (*Id.*) In addition, the Letters Rogatory provide for modification of the Non-Disclosure Agreement referenced in the Confidentiality Order so as to permit the Prospective Witnesses to obtain access to Confidential materials without requiring them to submit to the jurisdiction of a foreign court. (*Id.*)

### 5. The order sought is not unduly burdensome.

The Parties have also made considerable effort to ensure that the Letters Rogatory are not unduly burdensome to the Prospective Witnesses. In that regard, once the list of likely witnesses had been identified through the Parties' initial disclosures, the Parties promptly requested assistance from Penn West in contacting the Prospective Witnesses—the vast majority of whom are former Penn West employees—to alert them to the likely need for their testimony and to determine whether they were amenable to providing testimony. (Gredd Decl. ¶ 5.) In addition, the Parties requested that Penn West consider providing—and Penn West ultimately decided to provide—counsel for the Prospective Witnesses to advise them of their rights and obligations under Canadian law. (*Id.*)[9]

Once counsel was in place for a majority of the Prospective Witnesses, the Parties then engaged in substantial and productive discussions with various of the Prospective Witnesses'

---

[9] Despite diligent efforts by Penn West and the Parties, the process of locating all of the Prospective Witnesses and assisting them in securing counsel proved to be a lengthy one. (Gredd Decl. ¶ 6.) Indeed, while all of the Prospective Witnesses have now been located and contacted, two are still in the process of engaging counsel able to advise and act for them in connection with the Letters Rogatory. (*Id.* ¶ 9 & n.6.)

12

counsel with the goal of agreeing on procedures that would protect the rights of, and minimize burden on, the witnesses.[10] As a result of those discussions, various provisions have been incorporated into the Letters Rogatory and/or the drafts of the enforcement orders to be presented to the relevant Canadian courts. (*Id.* ¶¶ 12-14.)[11] Those provisions include:

- the provisions described above which afford various protections under Canadian and U.S. law, and which provide the Prospective Witnesses with the choice of proceeding under Canadian or U.S. procedures for the examination;

- provisions affording the Prospective Witnesses who have relocated from Alberta the choice of providing testimony either in Alberta or their current province of residence;

- provisions limiting the examination to a length that is well within the standard for Canadian examinations and providing that the dates for the examination will be subject to agreement between the Prospective Witnesses and the Parties, as long as the date agreed upon is within the deadline specified by this Court for completion of depositions;[12]

---

[10] Those discussions were, for the most part, conducted on a "without prejudice" basis—a procedure under Canadian law that permits counsel to engage in discussions while reserving all rights with respect to the topic under discussion, and that precludes disclosure of the specifics of those discussions without obtaining consent of the participants in those discussions. (Gredd Decl. ¶ 8 n.5.) In addition, in drafting the Letters Rogatory and proposed enforcement orders, the Parties also had the benefit of Penn West's reports on discussions with various of its former employees (all of whom already had counsel in place) indicating amenability in principle to providing testimony as long as certain specific concerns—such as having input in the date for the examination and protection against multiple examinations—were addressed. (*Id.* ¶ 8.)

[11] While it is not a requirement that proposed foreign enforcement orders be drafted before Letters Rogatory are issued, the Parties believed that doing so would help ensure that any Letters Rogatory issued by this Court would specify procedures that were likely to be acceptable to the Prospective Witnesses. (Gredd Decl. ¶¶ 8-12.) In addition, the Parties believed that drafting the proposed foreign enforcement orders and providing them to counsel for the Prospective Witnesses: (i) would assist counsel in determining more expeditiously whether their clients consented to the issuance of an order; (ii) would further assist in determining whether additional accommodations would be requested and could be afforded to particular witnesses; and (iii) would thereby enhance the speed with which the enforcement orders could be presented to, and acted upon, by the relevant courts. (*Id.*) If the Court would find it helpful to review the current drafts of any of the foreign enforcement orders, Defendants stand ready to provide them—though with the necessary caveat that they remain subject to review and further negotiation with the Prospective Witnesses.

[12] In that regard, Defendants note that they will shortly be seeking by separate application a 95-day extension of the deadline for completion of fact depositions, with concomitant adjustment of other deadlines. As will be described more fully in the Defendants' letter application, the extension is requested due to: (i) unanticipated difficulties encountered by the Parties—through no fault of any of the Parties—in connection with document discovery; and (ii) the complexities of obtaining and scheduling the substantial number of cross-border examinations needed in this case. Because the Court has not yet had an opportunity to consider or rule on Defendants' application for an extension, the Letters Rogatory recite the current deposition discovery deadline of August 6, 2018. (Ex. 1 at 4; Ex. 2 at 4; Ex. 3 at 4.) If the Court grants Defendants' application for an extension of that deadline, Letters Rogatory

- provisions affording the Prospective Witnesses (after execution of a Modified Non-Disclosure Agreement) a copy of any prior testimony given by them and the opportunity to review documents and discuss them with legal counsel prior to answering questions about those documents; and

- provisions ensuring that Prospective Witnesses are afforded the witness allowances specified under Canadian law.

(*Id.*; *see also* Ex. 1 (Sections III, IV and V); Ex. 2 (Sections III, IV and V); Ex. 3 (Sections III, IV and V).)

The Parties believe that the provisions described above are more than adequate to assure the relevant Canadian courts that the examinations sought would not be unduly burdensome to the Prospective Witnesses. In addition, while it is not yet known whether the Letters Rogatory and draft Canadian enforcement orders will be acceptable to all of the Prospective Witnesses,[13] the Parties believe that their consultative approach will surely increase the likelihood that the enforcement applications ultimately will not be opposed. (Gredd Decl. ¶¶ 8-11.) And, indeed, while that consultative process remains ongoing, it is noteworthy that no counsel for a Prospective Witness has yet reported that enforcement of the Letters Rogatory will be opposed, and several counsel have already indicated the contrary. (Gredd Decl. ¶ 8.)

---

reflecting the revised date can be submitted to the Court or, in the alternative, the relevant Canadian courts and the Prospective Witnesses can be advised separately of the new date.

[13] As of the date of this motion, counsel for a majority of the previously unrepresented Prospective Witnesses are still in the process of conferring with their clients, and the Parties are in turn conferring with counsel for certain Prospective Witnesses whose views were initially conveyed to the Parties by Penn West to determine whether any further adjustments to the draft enforcement orders will be needed to render them acceptable. In addition, with respect to certain of the Prospective Witnesses, counsel is not yet in place or was engaged only recently, and those counsel will of course need to review the draft enforcement orders. (Gredd Decl. ¶ 8.)

14

**Conclusion**

For the reasons stated, Defendants Jeffery A. Curran and Todd H. Takeyasu respectfully request that this Court enter an order in the form attached hereto as Exhibit 4 and thereby issue Letters Rogatory seeking judicial assistance from the Court of Queen's Bench of Alberta, the Ontario Superior Court of Justice, and the Nova Scotia Supreme Court in obtaining testimony from the Prospective Witnesses.

Dated: New York, New York
March 21, 2018

/s/ Helen Gredd
Helen Gredd
Leigh G. Llewelyn
Lise Rahdert
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, New York 10110
Tel: (212) 921-8399
Fax: (212) 764-3701
hgredd@lswlaw.com
lllewelyn@lswlaw.com
lrahdert@lswlaw.com

*Counsel for Defendant Jeffery A. Curran*

/s/ Richard F. Albert
Richard F. Albert
Jasmine Juteau
MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017
Tel: (212) 856-9600
Fax: (212) 856-9494
ralbert@maglaw.com
jjuteau@maglaw.com

*Counsel for Defendant Todd H. Takeyasu*