UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>PENN WEST PETROLEUM LTD., d/b/a OBSIDIAN ENERGY LTD., TODD H. TAKEYASU, JEFFERY A. CURRAN, and WALDEMAR GRAB,<br><br>        Defendants. | No. 17 Civ. 4866 (GHW) |

**DECLARATION OF HELEN GREDD IN SUPPORT OF
DEFENDANTS JEFFERY A. CURRAN'S AND TODD H.
TAKEYASU'S UNOPPOSED MOTION FOR THE ISSUANCE
OF LETTERS ROGATORY**

Helen Gredd, pursuant to 28 U.S.C. § 1746, declares as follows:

  1.  I am a partner in the law firm of Lankler Siffert & Wohl LLP, attorneys for Defendant Jeffery A. Curran in the captioned action. I respectfully submit this Declaration in support of the unopposed motion (the "Motion") of Mr. Curran and Todd H. Takeyasu (collectively, "Defendants") for the issuance of letters rogatory (the "Letters Rogatory") addressed to three Canadian courts—the Court of Queen's Bench of Alberta, the Ontario Superior Court of Justice, and the Nova Scotia Supreme Court—seeking the assistance of those courts in obtaining testimony from the 25 individuals listed in the Letters Rogatory (the "Prospective Witnesses").

  2.  I make this Declaration based upon: (i) personal knowledge; (ii) review of documents and testimony produced in this action and/or made available prior to the commencement of this action ("Litigation Materials"); (iii) review of public records; and

(iv) consultation with counsel for the parties in this action and with counsel for various of the Prospective Witnesses.

## I.     The Parties' Consultative Approach to the Letters Rogatory

3.     In keeping with the Court's directive at the initial conference, Defendants and Plaintiff United States Securities and Exchange Commission (the "SEC" and, collectively with Defendants, the "Parties") have worked cooperatively and extensively to present the Court with an agreed-upon set of Letters Rogatory.  In addition, the Parties have also worked cooperatively and extensively with counsel for various of the Prospective Witnesses with the goal of crafting procedures for examination that will be acceptable to the Prospective Witnesses and their counsel.

4.     The Parties pursued that consultative approach with respect to the Prospective Witnesses both to minimize burden on the Canadian courts and to guard against obstacles to, or delay in, the issuance of orders enforcing the Letters Rogatory.  Indeed, the Parties were strongly urged by Canadian counsel to pursue a consultative approach so as to avoid the very substantial delays that could result from a contested application to enforce Letters Rogatory—even where, as here, the merits of the application are indisputably strong.

5.     As a result, shortly after the Parties completed their exchange of initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1), the Parties sought the assistance of Penn West in locating and contacting the individuals listed in the initial disclosures[1]—the majority of whom were

---

[1] The SEC's initial disclosures, which were served on August 29, 2017, listed 24 individuals likely to have discoverable information that the SEC may use to support its claims.  Messrs. Curran and Takeyasu, along with Penn West (which has since settled the SEC's claims), served joint initial disclosures on September 19, 2017. Defendants' initial disclosures listed 13 additional individuals likely to have discoverable information that Defendants may use to support their defenses, as well as the 24 individuals previously listed by the SEC.

former Penn West employees[2]—to alert them to the likelihood that their testimony would be needed and to determine whether they were amenable to providing testimony.  In addition, the Parties requested that Penn West consider assisting their former employees in securing counsel to advise them on their rights and obligations under Canadian law in connection with the issuance of the Letters Rogatory.  Penn West agreed to assist the Parties in reaching out to its former employees and ultimately decided to make counsel available to those who did not already have counsel.

6. The process of (i) locating and contacting Penn West's former employees; (ii) assisting the Prospective Witnesses in securing counsel; and (iii) assisting counsel in familiarizing themselves with the issues relating to the Letters Rogatory proved to be time-consuming.  It was thus not until the latter part of January 2018 that all of the Prospective Witnesses had been contacted and a majority of them had counsel in place who were ready to address the Letters Rogatory.

7. While Penn West was engaged in that process, the Parties used the time productively by, among other things, researching requests for assistance to Canadian courts and conferring with one another and with their respective Canadian counsel about the terms of the Letters Rogatory and corresponding Canadian orders of enforcement.[3]  As a result, once counsel

---

[2] Of the 37 individuals listed in the Parties' initial disclosures, 29 are former employees of Penn West, one is a current employee, six are current or former employees of KPMG, Penn West's external auditor during the period relevant to the SEC Complaint (the "Relevant Period"), and one is an employee of PricewaterhouseCoopers ("PwC"), which provided certain consulting services to Penn West during the Relevant Period.  The 25 Prospective Witnesses who are the subject of the Letters Rogatory include 23 of the 29 former Penn West employees listed in the Parties' initial disclosures.  The remaining six are: two individuals who have agreed to provide testimony voluntarily outside of the Letters Rogatory process, s*ee* n.4 *infra*; one individual with health issues (as to whom possible accommodations that would permit his testimony are being explored); one individual who has relocated to the United States; and Messrs. Curran and Takeyasu.

[3] Although proposed foreign orders of enforcement need not be included in applications to a U.S. court for issuance of letters rogatory, and thus can be prepared after letters rogatory have been issued, the Parties believed that it would ultimately prove more efficient, and less burdensome on the relevant courts, for the Parties to prepare the proposed enforcement orders simultaneously with the letters rogatory so that:  (i) counsel for prospective witnesses could

3

had been engaged by a majority of the Prospective Witnesses—many of whom ultimately agreed to share the services of a single law firm in Alberta—the Parties were in a position to promptly provide counsel with a detailed set of proposed filings and thereby commence discussions with the goal of accommodating, if possible, any potential concerns of the Prospective Witnesses or their counsel that might cause them to oppose enforcement of the Letters Rogatory.[4]

8.  The Parties' discussions with counsel for various of the Prospective Witnesses proved to be very helpful in identifying potential areas of concern regarding the letters rogatory process, and the Parties made a significant number of modifications to the draft Letters Rogatory and proposed form of enforcement orders to address potential concerns.[5] As a result of that consultative process, no counsel for a Prospective Witness has to date reported that enforcement of the Letters Rogatory will be opposed, and several counsel have already indicated the contrary.

---

determine more expeditiously whether their clients would agree not to oppose issuance of the orders; (ii) the Parties could determine more expeditiously whether additional accommodations would be requested and could be afforded to particular witnesses; and (iii) the Parties could ensure that any letters rogatory requested from this Court specified procedures that were likely to be acceptable to the Prospective Witnesses.

[4] While the Parties could have attempted to obtain consent from the former employees to provide testimony without resort to the Letters Rogatory process, such consent could have been revoked at any time. The Parties accordingly considered it more prudent to seek agreement not to oppose the issuance of enforceable orders requiring testimony so as to minimize the potential for disruption or delay of the discovery process. As a result, the Parties are pursuing voluntary testimony outside the Letters Rogatory process only for those individuals who, in the collective judgment of the Parties, are unlikely to revoke consent to voluntary testimony. Those individuals are former Penn West employees Waldemar Grab and Susan Wenstrom and various employees of Penn West's external auditor KPMG.

[5] It should be noted that the Parties' discussions with Canadian counsel for the Prospective Witnesses were, for the most part, conducted on a "without prejudice" basis, and under Canadian law the specifics of such discussions are not to be disclosed without the consent of all participants. Accordingly, this Declaration refrains from disclosing communications with any of the Prospective Witnesses' counsel and focuses instead on the collective results of any discussions and the Parties' own efforts to anticipate and address potential concerns.

  It further bears noting that Penn West's reports to the Parties regarding the amenability of its former employees to providing testimony had indicated that a number of those employees, all of whom had been represented by counsel in the investigative process, were amenable in principle, but had a number of specific concerns, such as the ability to have input on the date selected for examination and assurance of a single coordinated examination. The Parties accordingly incorporated measures to address those various reported concerns in the documents they drafted. In addition, having now consulted at length with counsel for many of the previously unrepresented Prospective Witnesses, the Parties are in the process of consulting further with counsel for the Prospective Witnesses whose views were conveyed by Penn West to ensure that there are no additional concerns that need to be addressed.

9. Nonetheless, the Parties are not yet in a position to report to the Court on whether all of the Prospective Witnesses ultimately will agree not to oppose enforcement of the Letters Rogatory, and it appears that such a report would likely require at least several weeks more of consultation—principally between the Prospective Witnesses and their counsel, but also between the Parties and counsel for certain of the Prospective Witnesses.[6]

10. At the same time, however, the Parties believe that any remaining issues to be addressed would not require alteration of the terms of the Letters Rogatory, but instead could be resolved through adjustments in the proposed Canadian enforcement orders. As a result, the Parties believe that the process is now most efficiently advanced by: (i) presenting the Letters Rogatory to this Court; and (ii) if the Letters are issued, focusing on finalization of proposed enforcement orders for presentation to the relevant Canadian courts. In addition, because of the ground that has already been covered, the Parties regard it as realistic to believe that the next several weeks will yield significant progress in determining whether the consensus among the Prospective Witnesses will be to not oppose enforcement of the Letters Rogatory by the relevant Canadian courts—the result the Parties have been diligently working toward—or whether contested enforcement applications will be needed for one or more of the Prospective Witnesses.

11. The Parties also very much believe that the time devoted to a consultative approach will prove to be time well spent—either because it will, in fact, yield uncontested

---

[6] As the Parties understand it, counsel for a substantial number of the Prospective Witnesses are still in the process of conferring with their clients and do not expect that process to be completed before the end of March at the earliest. That process may yield the need for additional consultation about the terms of the proposed enforcement orders. In addition, any counsel who did not participate in the discussions that resulted in the current draft of the proposed enforcement orders will, of course, need adequate opportunity to review them and discuss any changes they may wish to request on behalf of their respective clients. And in that regard it bears noting that two of the Prospective Witnesses—former Penn West employee Laurence Broos and PwC employee Matthew Wetmore—do not yet have agreed-upon counsel in place due to complications caused by prior or current engagements of the firms that acted for them in connection with their investigative testimony.

enforcement applications or because it will significantly narrow any areas of disagreement. And because either result lessens both the burden on the Canadian courts and the likelihood of substantial delay in the discovery process, the Parties stand ready to continue to discuss, if necessary, any further modifications to the proposed enforcement orders that would yield an uncontested application before the relevant Canadian court.

12. The Parties further believe that the consultative approach that they have pursued has resulted in Letters Rogatory and proposed forms of enforcement orders that offer significant substantive and procedural protections to the Prospective Witnesses that will materially increase the likelihood of success even in a contested enforcement application. In that regard, the protections provided in the Letters Rogatory and the current drafts of the proposed enforcement orders include:

(a) affording Prospective Witnesses the ability to invoke any "privilege or duty to refuse to give evidence under the laws of Canada or the United States";[7]

(b) affording Prospective Witnesses the choice of proceeding under either Canadian or U.S. examination procedures;[8]

(c) affording Prospective Witnesses recourse to the relevant Canadian courts if they believe that any aspect of the examination is improper;

---

[7] Unless otherwise indicated, each of the substantive and procedural protections discussed in this Paragraph appear in Section III of each of the Letters Rogatory that are attached as Exhibits 1 through 3 to Defendants' Memorandum of Law in support of issuance of the Letters Rogatory.

[8] The Letters Rogatory directed to the Court of Queen's Bench of Alberta—which seeks testimony from 23 Prospective Witnesses—thus expressly requests that court to "[p]ermit the examination to be governed by the Canada Evidence Act, the Alberta Evidence Act and the Alberta Rules of Court or, *if the witness agrees*, by the United States Federal Rules of Civil Procedure and the United States Federal Rules of Evidence." (Section III.3) (emphasis added). The Letters Rogatory directed to the Ontario Superior Court of Justice and the Nova Scotia Supreme Court—which, collectively, seek testimony from two Prospective Witnesses—specify only Canadian procedures because it is the Parties' understanding that those two witnesses would prefer to use Canadian procedures.

    (d) affording Prospective Witnesses the same protections enjoyed by U.S.-based witnesses under the Confidentiality Order entered in this action, with modifications appropriate to reflect the nationality of the Prospective Witnesses;[9]

    (e) provisions in the proposed Canadian enforcement orders limiting the examination to a length that is well within the standard for Canadian examinations and affording the Prospective Witnesses (upon execution of a Modified Non-Disclosure Agreement) with a copy of any prior testimony given by them and with the opportunity to review documents and discuss them with legal counsel prior to answering questions about those documents; and

    (f) provisions ensuring that Prospective Witnesses are afforded the witness allowances specified under Canadian law.[10]

13.    In addition, both the Letters Rogatory and the drafts of the proposed Canadian enforcement orders are designed to maximize convenience to the Prospective Witnesses and the efficiency of the examination process. Thus, for example, the Letters Rogatory and proposed enforcement orders permit the examination to occur on any date agreed to by the Witness and the Parties as long as the date is prior to the deadline set by this Court for the completion of deposition discovery. Similarly, the Letters Rogatory and proposed enforcement orders allow Prospective Witnesses who are not currently residents of Alberta (referred to in the relevant documents as "Non-Resident Witnesses") to elect to give testimony in Alberta as long as the Non-Resident Witness expressly attorns—*i.e.*, submits—to the jurisdiction of the Court of Queen's Bench of Alberta.[11]

---

[9] Each of the Letters Rogatory expressly recites in Section V that the Prospective Witnesses are Producing Parties within the meaning of the Confidentiality Order and accordingly are entitled to the rights and protections of Producing Parties. In addition, Section V of each of the Letters Rogatory provides for modification of the Non-Disclosure Agreement referenced in the Confidentiality Order so as to permit the Prospective Witnesses to obtain access to Confidential materials without requiring them to submit to the jurisdiction of a foreign court.

[10] Section IV of each of the three Letters Rogatory expressly recites that the Prospective Witnesses shall be afforded the witness allowances specified in the fee schedules of the relevant court. In addition, the Canadian enforcement orders are expected to address the ability of the Prospective Witnesses to identify and seek reimbursement of certain other out of pocket costs.

[11] The purpose of having the Non-Resident Witness expressly attorn to the jurisdiction of the Court of Queen's Bench is two-fold. *First*, it guards against the delay that would be caused by a Non-Resident Witness initially agreeing voluntarily to travel to Alberta and then later declining to do so. *Second*, it enables the Court of Queen's

14. Accordingly, and after due consultation with Canadian counsel, U.S. counsel for Messrs. Curran and Takeyasu believe that the Letters Rogatory are not only fully consistent with the statutory requirements under Canadian law for enforcement, but also designed to enhance the likelihood that Canadian courts will exercise their discretion in favor of enforcement. In addition, after due consultation with Canadian counsel, U.S. counsel for Messrs. Curran and Takeyasu are aware of no Canadian public policy that would be violated by compelling the testimony requested in the Letters Rogatory. To the contrary, counsel believe that it would be sound public policy for Canadian courts to provide Messrs. Curran and Takeyasu—as citizens of Canada—with access to the evidence needed for their defense to an action brought against them by a foreign regulator.

## II. The Accuracy of the Facts Recited in the Letters Rogatory

15. In keeping with the Court's directive at the initial conference in this action, this Declaration also provides support for the various factual recitations made in the Letters Rogatory regarding the Prospective Witnesses and their relevance to this action. Should the Court require additional support for any of the facts discussed herein, this Declaration can be supplemented at the Court's direction.

### (a) The Names and Addresses of the Prospective Witnesses

16. The last known addresses and provinces of residence for current and former Penn West employees (*i.e.*, 24 of the 25 Prospective Witnesses) were obtained from Penn West and/or counsel for the Prospective Witnesses. The home address of the remaining Prospective Witness,

---

Bench to provide the Non-Resident Witness with the protections specified in the order enforcing the Letters Rogatory. Otherwise stated, the procedures specified for Non-Resident Witnesses are designed to redound to the benefit of both the Witness and the Parties as well as improve the efficiency of the Letters Rogatory process as a whole.

8

PwC employee Matthew Wetmore, is unknown, but public records confirm that Mr. Wetmore is still employed at PwC's Calgary office.

17. The information provided in the Letters Rogatory regarding the addresses and provinces of residence for the Prospective Witnesses is true and correct to the best of my knowledge and belief. In addition, counsel for Defendants and/or the Prospective Witnesses will provide any updates to that information when the Letters Rogatory are presented for enforcement.

(b) **The Nature and Purpose of Proceedings and Summary of Facts**

18. The factual recitations contained in Section I of each Letters Rogatory, which is entitled "Nature and Purpose of Proceedings and Summary of Facts," are based upon: (i) the filings in this action; (ii) public records relating to Penn West; and (iii) with respect to the current residence of Messrs. Curran and Takeyasu, personal knowledge and consultation with counsel for Mr. Takeyasu. In addition, the factual recitations contained in Section I were circulated to each of the Parties and reflect their review and comment.

19. As a result of that process, the factual recitations contained in Section I of the Letters Rogatory are true and correct to the best of my knowledge and belief. In addition, the appendix referenced in Section I of each Letters Rogatory (*i.e.*, Appendix II in the case of the Alberta Letters Rogatory and Appendix I in the case of the Ontario and Nova Scotia Letters Rogatory) is a true and correct copy of the SEC Complaint in this action.

(c) **Necessity of the Witnesses' Testimony and Subject Matter about Which They Will be Examined**

20. Each of the Letters Rogatory contains factual recitations regarding the necessity of the Prospective Witnesses' testimony and the subject matter about which they will be

examined. Those factual recitations are contained in Section II of each Letters Rogatory and in Appendix III to the Alberta Letters Rogatory (collectively, the "Witness Descriptions").

21. The factual recitations contained in the Witness Descriptions are based upon: (i) review and analysis by counsel for Messrs. Curran and Takeyasu of Litigation Materials; (ii) personal knowledge (with respect to the lack of opportunity by counsel for Messrs. Curran and Takeyasu to participate in any investigative testimony provided by the Prospective Witnesses to the SEC or the Alberta Securities Commission ("ASC")); (iii) consultation with counsel for the SEC (with respect to statements made about the views or position of the SEC); and (iv) review of Litigation Materials and public records and, as necessary, consultation with counsel for the Prospective Witnesses (with respect to the nationality of Prospective Witnesses).

22. Section II of each Letters Rogatory makes clear—and Appendix III expressly states—that the Witness Descriptions reflect the views and analysis of Defendants, and not necessarily the SEC. Nonetheless, counsel for the SEC was provided with the opportunity to review and comment on the Witness Descriptions, and certain of the SEC's comments were incorporated before the Witness Descriptions were finalized. Counsel for the SEC also commented on the topics for examination contained in the Witness Descriptions, and those comments were incorporated before the Witness Descriptions were finalized.

23. As a result of that process, the Witness Descriptions are true and correct to the best of my knowledge and belief.

**(d) Confidentiality Order**

24. Each of the Letters Rogatory appends a true and correct copy of the Confidentiality Order entered in this action. The Confidentiality Order appears as Appendix IV

to the Alberta Letters Rogatory and as Appendix II to the Ontario and Nova Scotia Letters Rogatory.

**(e) List of Counsel**

25.     Each of the Letters Rogatory provides, for the convenience of the relevant Canadian court, a list of counsel for the Parties and known counsel for the relevant Prospective Witnesses (the "Counsel List").  The Counsel List is provided as Appendix V to the Alberta Letters Rogatory and as Appendix III to the Ontario and Nova Scotia Letters Rogatory.  The information contained in the Counsel Lists is based upon:  (i) personal knowledge; (ii) consultation with counsel for the SEC; and (iii) consultation with counsel for Penn West and the Prospective Witnesses.  As a result of that process, the Counsel Lists are true and correct to the best of my knowledge and belief.

*     *     *     *

26.     I declare until penalty of perjury that, to the best of my knowledge and belief, all of the foregoing is true and correct.

Dated: New York, New York
         March 21, 2018

/s/ Helen Gredd<br>Helen Gredd